**Eleanor SCHIESSLE, Plaintiff-Appellant,**

v.

**Donald E. STEPHENS, et al.,
Defendants-Appellees.**

**No. 82–2223.**

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1983.

Decided Sept. 16, 1983.

Craig A. Peterson, Evanston, Ill., for plaintiff-appellant.

Timothy F. Kocian, Antonow & Fink, Chicago, Ill., for defendants-appellees.

Before WOOD, ESCHBACH and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff, Eleanor Schiessle, appeals from an order of the United States District Court for the Northern District of Illinois, Eastern Division, disqualifying her co-counsel, the law firm of Ross, Hardies, O'Keefe, Babcock & Parsons in this antitrust action. The question presented for review is whether, in light of our recent pronouncements on attorney disqualification, the district court erred in its determination that disqualification was required in this case. We hold that the rebuttable presumption rule adopted by this court in *Novo Terapeutisk Laboratorium, etc. v. Baxter Travenol Lab.,* 607 F.2d 186 (7th Cir.1979) (en banc) and *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715 (7th Cir.1982), and reaffirmed in *LaSalle Nat. Bank v. County of Lake,* 703 F.2d 252 (7th Cir.1983), is dispositive of this appeal and consequently we affirm the order of the district court.[1]

I.

Eleanor Schiessle commenced this action in August of 1979 against eighteen defendants including Arthur Swanson, Carl Swanson and Paul Swanson (individually and as Arthur Swanson and Associates) alleging that various acts taken by the defendants to condemn and to redevelop property owned by the plaintiff in Rosemont, Illinois, violated, *inter alia,* federal antitrust law. The plaintiff retained the law firm of Ross, Hardies, O'Keefe, Babcock & Parsons (Ross) to represent her in this action, and Tobin Richter, a partner in the Ross firm, appeared on behalf of Schiessle in proceedings before the district court. On August 14, 1979, prior to an official appearance being filed on behalf of the Swansons, Michael King, at that time a partner at the Antonow & Fink law firm, contacted Attorney Richter by phone asking that the lawsuit be dismissed as to the Swanson defendants. In a subsequent phone conversation two days later, Attorney Richter informed King that Schiessle would not dismiss the Swansons as defendants but offered that there was a possibility of settlement with the other defendants and that consideration would be given to taking the Swansons' depositions at an early date. However, subsequent to the phone conversations between Attorneys Richter and King on August 30, 1979, Kenneth Lodge, of the law firm of Burke, Nash and Shea, Ltd., filed an appearance on behalf of the Swansons. Attorney Lodge remained as the Swansons' attorney of record until October 19, 1979, when the district court granted his motion to withdraw from the case and to substitute Attorneys William Goldberg and Timothy Kocian of the Antonow & Fink firm as counsel for the defendant Swansons.

Attorney King left the Antonow & Fink law firm and joined the Ross law firm as a partner on October 1, 1979. Attorney King changed firms prior to the withdrawal of Attorney Lodge and the substitution of Antonow & Fink as counsel for the Swanson

1. This court's most recent pronouncement regarding attorney disqualification, *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983), does not control the resolution of this appeal as noted in footnote 2, *infra.*

defendants. Antonow & Fink raised no objection to the Ross firm's representation of the plaintiff Schiessle at the time Antonow & Fink became counsel of record for the Swansons and did not object until nearly two years later. In August of 1981, Attorney Kocian of the Antonow & Fink law firm informed Richter of the Ross firm that if Schiessle refused to dismiss the Swansons as defendants, Antonow & Fink (Kocian) would *inter alia,* move to disqualify the Ross firm as counsel for plaintiff Schiessle on the ground that Attorney King had participated in the Swansons' defense while at Antonow & Fink, thereby disqualifying the entire Ross firm from participating in the case on behalf of Schiessle.

The Ross firm refused to dismiss the Swansons and filed a motion with the district court in September of 1981, requesting a declaration of qualification as counsel for the plaintiff. In conjunction with that motion, the Ross firm filed affidavits of Attorneys King and Richter. In his affidavit, Attorney King averred that although he did some work on the present action on behalf of the Swansons during his affiliation with Antonow & Fink, he never filed either an appearance on behalf of the Swansons or an answer, nor did he conduct any "detailed investigation into the case." In fact, according to King, he never met the Swansons. With regard to his contact with his case after he left the Antonow & Fink firm, he averred:

> "Since the time I joined Ross, Hardies, I have, of course, not worked on the *Schiessle* case, have not filed an appearance, have not discussed the merits of the case, nor have I informed anyone of any conversations or information, if any, which occurred during my time at Antonow & Fink. At this time, I know nothing of the merits of the case, have not worked on the case, have billed no time to Mrs. Schiessle, met Mrs. Schiessle, nor participated in any discussion of the merits of the case with her.

> "Notwithstanding that I would not recognize the Swansons or Mrs. Schiessle if they walked into my office, I will contin-

ue as I have in the past to have absolutely no contact with the case."

The Swanson defendants responded by filing a cross-motion for disqualification of the Ross firm. Attached to the Swansons' cross-motion was an affidavit of Attorney Goldberg of the Antonow & Fink firm reciting (1) that during August and September of 1979 Michael King was the Antonow & Fink "partner in charge" of representing the Swansons in the antitrust lawsuit; (2) that on "four separate occasions [King] had conversations with Paul Swanson concerning [the] lawsuit;" and (3) that King had "numerous conferences concerning this lawsuit and the Swansons with other attorneys of Antonow & Fink."

On June 29, 1982, the district court granted the defendants' cross-motion and disqualified the Ross firm as counsel for the plaintiff Schiessle in her action against the Swansons relying exclusively on the parties' affidavits and without benefit of an evidentiary hearing. The district court, relying on *Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221 (7th Cir.1978), concluded that because the representation of the Swansons by Attorney King and his former firm (Antonow & Fink) and the representation of Schiessle by the Ross firm (King's present firm) involved the identical antitrust lawsuit, the court would irrebuttably presume that confidences were shared between King and the other members of the Ross firm. Therefore, according to the court, the Ross firm was precluded from acting as Schiessle's counsel in the instant action. Schiessle now appeals the district court's order of disqualification.

## II.

■ Questions of ethical propriety like those presented in this appeal have been addressed by this court within the past year. *See, e.g., Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715 (7th Cir. 1982); *LaSalle Nat. Bank v. County of Lake,* 703 F.2d 252 (7th Cir.1983); and *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983). In those cases we noted two important considerations invoked in

motions to disqualify counsel and emphasized the delicacy of the balance that must be maintained between them: the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice. *Freeman*, 689 F.2d at 721. Accordingly, this court adopted an approach for resolution of disqualification questions which accommodated these important considerations and we have continuously maintained that disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman*, 689 F.2d at 721.

█ The analysis outlined in our prior decisions concerning attorney disqualification comprises three steps. First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted.[2] If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make disqualification proper. *LaSalle Nat. Bank,* 703 F.2d at 255–56.

█ In the case at bar, there is no dispute that the subject matter of the prior and present representations are substantially related—indeed the subject matter is identical as it concerns the same antitrust litigation. The only factor that has changed is that Attorney King is now a partner of the Ross firm rather than the Antonow & Fink firm. Therefore, we find no difficulty in concluding that the representation involved is substantially related.

█ The second step in our analysis requires us to ascertain whether the presumption of shared confidences which arises from our determination that the representations are substantially related has been rebutted with respect to the prior representation. In other words, we must determine whether the attorney whose change of employment created the disqualification issue was actually privy to any confidential information his prior law firm received from the party now seeking disqualification of his present firm. The evidence presented to rebut this presumption must "clearly and effectively" demonstrate that the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation. *Freeman*, 689 F.2d at 723. In the case at bar, the affidavit of Attorney Goldberg of the Antonow & Fink firm stands uncontradicted in its recital that King, while a partner at Antonow & Fink, was (1) "partner in charge" of representing the Swansons in the *Schiessle* litigation; (2) that King dis-

---

**2.** The existence of a substantial relationship gives rise to a presumption of shared confidences. *See Novo Terapeutisk Laboratorium, etc. v. Baxter Travenol Lab.,* 607 F.2d 186 (7th Cir.1979) (en banc).

The present fact situation should be distinguished from that found in our recent decision in *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983) where we held that the presumption of shared confidences was irrebuttable. In that case we stated:

"There is an exception for the case where a member or associate of a law firm (or government legal department) changes jobs, and later he or his new firm is retained by an adversary of a client of his former firm. In such a case, even if there is a substantial relationship between the two matters, the lawyer can avoid disqualification by showing

that effective measures were taken to prevent confidences from being received by whichever lawyers in the new firm are handling the new matter. *See Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186, 197 (7th Cir.1979) (en banc); *Freeman v. Chicago Musical Instrument Co., supra,* 689 F.2d at 722–23; *LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252 (7th Cir.1983). The exception is inapplicable here; the firm itself changed sides." *Analytica*, 708 F.2d at 1267. Unlike *Analytica,* only one attorney has moved from the law firm now representing some of the defendants to the law firm representing the plaintiff. Since the present fact situation falls within the exception recognized in *Analytica,* our analysis does not conflict with that decision.

cussed the lawsuit on four occasions with Paul Swanson; and (3) that King had taken part in numerous discussions at Antonow & Fink regarding the antitrust lawsuit. Accordingly, we conclude that Attorney King has not rebutted the presumption of shared confidences with respect to his involvement in the case while he was a partner at Antonow & Fink.

Lastly, the district court must determine whether the presumption of shared confidences has been rebutted with respect to the present representation. In other words, the court must determine whether the knowledge of the "confidences and secrets" of the Swansons which King brought with him has been passed on to or is likely to be passed on to the members of the Ross firm. In *LaSalle Nat. Bank,* 703 F.2d at 259, we held that the presumption of shared confidences could be rebutted by demonstrating that "specific institutional mechanisms" (e.g., "Chinese Walls") had been implemented to effectively insulate against any flow of confidential information from the "infected" attorney to any other member of his present firm. Such a determination can be based on objective and verifiable evidence presented to the trial court and must be made on a case-by-case basis. Factors appropriate for consideration by the trial court might include, but are not limited to, the size and structural divisions of the law firm involved, the likelihood of contact between the "infected" attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the "infected" attorney from access to relevant files or other information pertaining to the present litigation or which prevent him from sharing in the fees derived from such litigation. *LaSalle Nat. Bank,* 703 F.2d at 259.

We hold that the district court erred in relying on an irrebuttable presumption to find that confidences and secrets had been shared between King and other members of the Ross firm because our decisions in *Freeman* and *LaSalle* make it clear that the presumption of shared confidences can be rebutted. *LaSalle Nat. Bank,* 703 F.2d at 257. However, we reach the same conclusion as the district court that the Ross firm must be disqualified from representing Schiessle because: (1) Attorney King obviously had knowledge of the Swansons' case as he failed to answer the affidavit of the Antonow & Fink firm reciting (a) that he was the "partner in charge" of representing the defendants, (b) that he discussed the lawsuit on four occasions with Paul Swanson, and (c) that he had taken part in numerous discussions at the firm regarding the antitrust litigation; and (2) no evidence exists in the record establishing that the Ross firm has "institutional mechanisms" in effect insulating King "from all participation in and information about [the] case." *LaSalle Nat. Bank,* 703 F.2d at 257. It should be noted that counsel for the plaintiff informed the court at oral argument that the Ross firm was without "formal institutional[ized] ... screening" insulating Attorney King from the members of the firm representing Schiessle.

We hold that at the time Attorney King changed firms he had knowledge of the Swansons' case and that there were no "institutional mechanisms" in existence at the Ross firm to protect the sacrosanct privacy of the defendants' attorney-client relationship. The *LaSalle* decision requires that when an attorney with knowledge of a prior client's confidences and secrets changes employment and joins a firm representing an adverse party, specific institutional mechanisms must be in place to ensure that information is not shared with members of the new firm, even if inadvertently. *LaSalle,* 703 F.2d at 259. The record in this case shows that the Ross firm at the time of Attorney King's transfer did not have specific institutional mechanisms under *LaSalle* to insure that King would have no contact with the Schiessle case. We hold that the Ross firm must be disqualified from the continued representation of Schiessle.

### III.

The order of the district court is AFFIRMED.