**In re Jesse H. SHARPE, Jr.**

**Appeal of LOMAS MORTGAGE USA, f/k/a Lomas and Nettleton Company, Creditor.**

No. 88 C 10350.

Bankruptcy No. 88 B 10177.

United States District Court, N.D. Illinois, E.D.

April 6, 1989.

---

338

Fisher & Fisher, Chicago, Ill., for Lomas Mortgage USA.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

What would you do if you woke up one morning to find the attorney you had retained to file for bankruptcy representing a mortgage company opposing your petition? Move to disqualify? Well, Jesse Sharpe did just that when he discovered attorney Marc Scheinbaum representing Lomas Mortgage, U.S.A. ("Lomas"). Bankruptcy Judge Coar granted the motion, disqualifying Scheinbaum and his law firm, Fisher & Fisher, from representing Lomas in this case. Lomas appeals, but this court affirms.

### FACTS

On June 21, 1981 Lomas loaned $16,800 to Sharpe in return for a first mortgage on property located in Chicago, Illinois. A short time later, Sharpe defaulted on his mortgage payments, and in January, 1984 Lomas, represented by Fisher & Fisher, filed a foreclosure action in federal court. *Lomas v. Sharpe*, 84 C 897 (N.D.Ill.).

In October, Sharpe went to the Law Offices of Marvin J. Kaplan ("Kaplan") to inquire about filing for bankruptcy. His initial interview was conducted by Marc Scheinbaum. During the interview, Scheinbaum's role was to obtain Sharpe's financial and personal data, and propose a bankruptcy plan. Sharpe retained Kaplan, and the firm filed for a Chapter 13 bankruptcy on his behalf. *In re Sharpe*, 84 B 13006 (N.D.Ill.).

The bankruptcy plan called for bringing the mortgage current within 24 months through scheduled payments to a Chapter 13 trustee. Sharpe was also required to make current monthly payments to Lomas. On May 2, 1986, the bankruptcy court dismissed the petition due to Sharpe's failure to make the required payments to the trustee.

With the bankruptcy stay removed, Lomas obtained a judgment of foreclosure against Sharpe in the civil action that had been pending when Sharpe filed for bankruptcy. The district court scheduled a Special Commissioner's Sale for August 5, 1986. Before that date arrived, however, Sharpe filed for bankruptcy again. *In re Sharpe*, 86 B 10484 (N.D.Ill.). Lomas moved for dismissal of this petition, and on February 17, 1987, the case was dismissed.

For reasons not apparent on the record, Lomas filed another civil action for foreclosure against Sharpe on April 20, 1987. *Lomas v. Sharpe*, 87 C 3636 (N.D.Ill.). On May 19, 1988 Judge Kocoras entered judgment against Sharpe and scheduled a sale of the property for July 5, 1988.

Four days before the sale, Sharpe filed the instant bankruptcy petition. Lomas moved to dismiss the petition on the

grounds that it was not filed in good faith. Fisher & Fisher still represented Lomas, but this time attorney Scheinbaum, who had become an associate at Fisher & Fisher in June, 1985, was the attorney assigned to the case.

Finding himself confronted by a lawyer who had represented him in an earlier bankruptcy case, Sharpe moved to disqualify Scheinbaum and Fisher & Fisher from representing Lomas in the bankruptcy court. Lomas responded to the motion with a written brief, arguing that Sharpe had not shown a prima facie case for disqualification; however, it provided neither an affidavit nor any other evidence supporting its argument that Scheinbaum had not received confidential information from Sharpe.

At a hearing on October 12, 1988 Bankruptcy Judge Coar listened to the arguments of both sides. He then ruled that the possibility that Sharpe had disclosed to Scheinbaum confidential information relevant to a bankruptcy petition, combined with Scheinbaum's failure to present any evidence contradicting the presumption that he had obtained confidential information from Sharpe, mandated the disqualification of Scheinbaum and his law firm. Lomas filed a motion to reconsider, insisting that the order was too broad and requesting an evidentiary hearing, but once again submitted no evidence supporting its position. At a hearing on October 20, Judge Coar denied the motion. Lomas then appealed to this court pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rules 8001 et seq.

## DISCUSSION

*Standing*

Although the parties have failed to do so, this court must first consider its jurisdiction over this appeal. 28 U.S.C. § 158(a) grants the district courts "jurisdiction to hear appeals from final judgments, orders and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." Thus, if the bankruptcy court's disqualification order constitutes a final order, then Lomas has

the right to take this appeal. On the other hand, if the disqualification order is interlocutory, then leave of this court is required before the court may reach the merits.

In *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982), the Seventh Circuit held that an order disqualifying counsel, though not a final judgment in the traditional sense, falls within the collateral order exception of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and is therefore appealable under 28 U.S.C. § 1291. All things being equal, that holding would suffice to make the disqualification order here a final order for the purposes of § 158(a). But all things are not equal, for in *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), the Supreme Court held that a disqualification order is not an immediately appealable final order under § 1291.

In light of *Koller*, Lomas clearly erred in fashioning his appeal as an appeal as of right rather than seeking leave to appeal pursuant to Bankruptcy Rule 8003(a). *See In re Klein*, 70 B.R. 378, 380 n. 1 (N.D.Ill. 1987). Nevertheless, this error does not mandate dismissal of the appeal. On the contrary, Rule 8003(c) instructs this court "to consider [Lomas's] notice of appeal as a motion for leave to appeal," and to either grant or deny leave as the court sees fit.

Although *Koller* makes clear that the Supreme Court does not consider disqualification orders as a class worthy of special status under the collateral order doctrine, that case does not prevent this court from granting leave to appeal from a bankruptcy court's disqualification order. As noted above, § 158(a) gives the district court the discretion to grant leave to appeal interlocutory orders that are not appealable as of right under this section (and would not be appealable as of right under § 1291). Three factors have motivated this court to exercise its discretion and accept this appeal.

First, this case involves the disqualification of a law firm that has represented a

client for a number of years. Thus, an error on the bankruptcy court's part could do long term damage not easily remediable in a later appeal. *Cf. In re American Cable Publications, Inc.*, 768 F.2d 1194, 1195 (10th Cir.1985) (exercising mandamus jurisdiction to hear challenge to disqualification order notwithstanding *Koller* where irreparable harm could result).

Second, although the Seventh Circuit has issued a number of opinions in recent years clarifying the rules for attorney disqualification, the law in this area is still evolving. This case involves a factual scenario not addressed in those cases, and, as the bankruptcy court noted in its oral ruling, presents a close case under the Seventh Circuit's precedents. A ruling by a district court would therefore substantially contribute to the development of the law. *See Sun Studs, Inc. v. Applied Theory Associates, Inc.*, 772 F.2d 1557, 1566 (Fed.Cir. 1985) (accepting discretionary appeal from disqualification order where district court certified the importance of the controlling legal issue).

Finally, Sharpe has not objected to having this court grant leave to appeal, and has thereby implicitly indicated his acquiescence in this court's hearing the appeal. Accordingly, the court grants Lomas leave to appeal the bankruptcy court's order, and turns to the merits of the appeal.

*Merits*

Over the past decade, the Seventh Circuit has developed a coherent analysis for determining when an attorney representing a party adverse to a former client should be disqualified. The analysis stems from Canons 4 and 9 of the ABA Code of Professional Responsibility, which provide that attorneys shall maintain the confidences of their clients (Canon 4) and avoid even the appearance of impropriety (Canon 9). It seeks to ensure that a lawyer will not use "confidential information that he has obtained from a client against that client on behalf of another one," *Analytica, Inc. v. N.P.D. Research, Inc.*, 708 F.2d 1263, 1266

(7th Cir.1982), while at the same time to protect the qualified right of a party "to proceed with counsel of its choice." *Schiessle v. Stephens*, 717 F.2d 417, 410 (7th Cir.1983); *Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 715 (7th Cir. 1977).

Under this analysis, the court first must determine whether the attorney's representation of his former client is substantially related to the current lawsuit. *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir.1978). The two matters are substantially related "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. N.P.D. Research, Inc.*, 708 F.2d at 1266.

If the matters are not substantially related, then disqualification is inappropriate. But if they are, this substantial relationship creates a rebuttable presumption that the attorney obtained confidential information potentially harmful to the former client during the prior representation. *Novo Terapeutisk Laboratorium v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 197 (7th Cir.1979) (en banc).

Once this rebuttable presumption arises, the attorney must "clearly and persuasively show that he was not privy to the confidences and secrets of his client." *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir.1983). If the attorney himself represented the former client, he must show that the client shared no confidences with him during the relationship. *Panduit, Corp. v. All Astates Plastic Manufacturing Co.*, 744 F.2d 1564, 1577 (Fed. Cir.1984). On the other hand, if the attorney merely worked for the firm representing the former client, then the attorney must show that he did not have access to any confidential information that may have been disclosed. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 723 (7th Cir.1982).[1]

---

**1.** Some courts and commentators have noted that there are really two distinct presumptions which come into play once a substantial relationship is found. *See Panduit, Inc. v. All Astates Plastic Manufacturing Co.*, 744 F.2d 1564, 1577 (Fed.Cir.1984); Radley, "The Law of Attor-

If the attorney rebuts the presumption that he obtained confidential information about the former client, then he and his new law firm may represent a party adverse to the former client in current litigation. If, however, he fails to rebut the presumption, then he may not represent the adverse party. Yet, his law firm may still do so if it can rebut the presumption of imputed knowledge—i.e., the presumption that everyone in a law firm knows what all the other lawyers in the firm know. *LaSalle National Bank v. County of Lake*, 703 F.2d at 257; *see supra* at pages 340–41 n. 1. Rebutting this presumption generally requires that the firm have some mechanism in place, such as a "Chinese Wall," for keeping lawyers away from cases in which their participation would create a conflict of interest. *Schiessle v. Stephens*, 717 F.2d at 421.

■ In this case, it is uncontested that Scheinbaum worked on Sharpe's case when Sharpe first retained Kaplan, and then worked for Lomas in its litigation against Sharpe. In addition, neither Scheinbaum nor Fisher & Fisher presented any evidence to rebut the presumptions that Scheinbaum had obtained confidential information from Sharpe and that he later passed it on to the lawyers at Fisher & Fisher.[2] Thus, the only question here is whether there exists a substantial relationship between Kaplan's representation of Sharpe and Sharpe's current litigation against Lomas. For if there is, then the rebuttable presumptions stand

unrebutted, and disqualification of both the attorney and the law firm is required.

The substantial relationship inquiry requires a three-part analysis. First, the court must factually reconstruct the scope of the prior legal representations. Second, the court must determine what confidential information may reasonably be inferred to have been provided to a lawyer representing a client in such matters. Third, the court must decide whether that information is relevant to the current litigation. *LaSalle National Bank v. County of Lake*, 703 F.2d at 256. If the answer is affirmative, then a substantial relationship exists and disqualification is presumptively required.

Sharpe retained Kaplan to represent him in filing for bankruptcy and in devising a plan to save his home from foreclosure. Judge Coar determined that in the course of such a representation Sharpe may well have revealed to Kaplan's attorneys, including Scheinbaum, a good deal of information about his financial circumstances—information going beyond that which is necessary merely to file a petition. Judge Coar also determined that this information could be relevant to Lomas's efforts to contest Sharpe's current petition. This court reviews those determinations under an abuse of discretion standard. *Ibid.*

Lomas agrees with the bankruptcy judge that Kaplan represented Sharpe in filing for bankruptcy. It contends, however, that the judge erred in finding that the matters Sharpe may have disclosed during that rep-

---

ney Disqualification: A Review," 77 *Ill.B.J.* 256 (January, 1989). One, the presumption of shared confidences, presumes that the former client revealed confidential information to his attorney during the course of their relationship. The other, the presumption of imputed knowledge, presumes that the lawyer divulged these confidences to every other lawyer within his firm.

Most of the Seventh Circuit's cases to date have addressed only the latter presumption, and there is some indication in these cases that the former presumption is an irrebutable one. See *Analytica, Inc. v. N.P.D. Research, Inc.*, 708 F.2d at 1267; *Novo Terapeutisk Laboratorium v. Baxter Travenol Laboratories, Inc.*, 607 F.2d at 197; *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 558 F.2d at 225–26. However, because Lomas

presented no evidence that Scheinbaum did not receive confidential information from Sharpe, this court need not decide whether the presumption of shared confidences is rebuttable: If a substantial relationship exists between Scheinbaum's work for Sharpe and his subsequent work for Lomas—and, as discussed below, this court finds that it does—then the presumption controls in any case.

2. Although Lomas, through Fisher & Fisher, moved for an evidentiary hearing, the bankruptcy judge acted well within his discretion in denying this request. Not only had Lomas failed to request such a hearing until its motion for reconsideration, but even in the latter motion it provided no evidence demonstrating the need for such a hearing.

resentation could be relevant here. Lomas points out that Scheinbaum participated only in Sharpe's initial interview, that a bankruptcy petition requires the disclosure of the petitioner's financial information, and that the current bankruptcy petition is, and indeed must be, predicated on a different ground than the petition pending when Scheinbaum was with Kaplan.

To the extent Lomas seeks to differentiate between the work Scheimbaum did on Sharpe's petition and the work done by other Kaplan lawyers, it misses the point of the substantial relationship test. As the first part of the disqualification inquiry, the substantial relationship test presumes that every lawyer in a law firm knows everything about every case in the firm. This presumption is rebuttable, but only after a substantial relationship is found. In any case, Scheinbaum presented no evidence to rebut it, so the only question presented here is whether it reasonably may be inferred that Sharpe revealed confidential information to Kaplan attorneys while Scheinbaum was there that could be relevant to the current bankruptcy proceeding.

Lomas's other arguments are not sufficiently persuasive to warrant reversing the bankruptcy judge's ruling. It is true that much of what Sharpe revealed to Scheinbaum and other Kaplan attorneys would have become part of the public record, and that the original petition was dismissed solely because Sharpe failed to make the payments required under the bankruptcy plan. It may also be true that, as of now, Lomas's only basis for opposing the current petition is that the petition allegedly was brought in bad faith. But these facts do not mean that Scheinbaum could not have received confidential information from Sharpe potentially relevant to this petition.

On the contrary, a bankruptcy petitioner might well reveal a good deal more about his financial circumstances than that which goes into his petition; indeed, he would be well advised to do so if he wishes to obey the law and obtain a satisfactory plan. And, as the bankruptcy judge noted in his ruling, although Lomas thus far has op-

posed bankruptcy on only one ground, there is nothing to prevent it from raising other issues down the road, issues that could involve information Sharpe revealed to Kaplan when Scheinbaum was there.

It is not for the bankruptcy court, nor this court, to speculate about the nature of that information. *See Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 226–27. Nor is it necessary, at least at the "substantial relationship" stage, for Sharpe to reveal what that information might be. *Analytica, Inc. v. N.P.D. Research, Inc.*, 708 F.2d at 1267. It is enough that information, reasonably within the scope of the prior representation could be relevant to the current litigation.

Here, the bankruptcy judge concluded that it could be, and this court cannot say that he abused his discretion in this finding. Since Scheinbaum did not see fit to present evidence contradicting the resulting presumption, and since Fisher & Fisher chose to place Scheinbaum on Sharpe's case, this court must agree with the bankruptcy judge's decision to disqualify them from representing Lomas.

This court recognizes that this ruling will deprive Lomas of its chosen counsel, and deprive Fisher & Fisher of work for a valued client. But, contrary to the assertions of Lomas, this result obtains not because Sharpe has abused the disqualification process, but instead because Fisher & Fisher chose to place Scheinbaum on the case. Although the Seventh Circuit has demonstrated an increased reluctance to disqualify firms merely because they hire an attorney who happened to have worked for an opposing party at some time in the past, the Court has shown no such reluctance when the firm places that lawyer in direct contact with the opposing party's case. *See Analytica, Inc. v. N.P.D. Research, Inc.*, 708 F.2d at 1266–67.

This case illustrates the importance of that distinction. Had Fisher & Fisher kept Scheinbaum off this case, the chance that he would ever have had the opportunity to use confidential information against Sharpe would be minimal. Given the large number of intake interviews Scheinbaum apparent-

ly did while at Kaplan, he might not have even recalled having worked for Sharpe. And if he did, he almost certainly would have had no opportunity to bring this information to bear against Sharpe (unless he intentionally sought to familiarize himself with the case for that purpose, a breach of his ethical duties this court would not presume).

However, by taking primary responsibility for the case, Scheinbaum placed himself in direct confrontation with a former client. While he suggests (albeit not under oath) that he cannot recall receiving confidential information from Sharpe, it is impossible for him, or this court, to know the extent of the information he might have learned and stored in the recesses of his mind—information which, consciously or subconsciously, could become part of his litigation strategy against his former client.

Indeed, though Scheinbaum states in one breath that he gave no confidential legal advice to Sharpe, he then says in another that he advised Sharpe to make his payments to the Chapter 13 trustee. This revelation may not amount to a breach of his ethical duties, but it does give rise to an inference that Sharpe acted improperly, and against his lawyer's advice, in defaulting on his obligations in a prior bankruptcy. That Lomas would seek to make this argument in contesting the instant petition would surprise no one, but this court cannot permit it to do so through Sharpe's former attorney.

## CONCLUSION

The judgment of the bankruptcy court is affirmed.