**In re CAPEN WHOLESALE, INC., Debtor.**

**CAPEN WHOLESALE, INC., Appellant,**

**v.**

**M. Scott MICHEL, United States Trustee, Appellee.**

**No. 94 C 2573.**

United States District Court, N.D. Illinois, Eastern Division.

July 12, 1995.

---

Steven Bennett Towbin, D'Ancona & Pflaum, David A. Newby, Chicago, IL, for Capen Wholesale, Inc.

M. Scott Michel, United States Trustee's Office, Kathryn Marie Gleason, Sandra Rasnak, United States Trustee, Chicago, IL, for U.S.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

This case is before the court on appeal from an order entered by Bankruptcy Court Judge Jack B. Schmetterer denying the Application of Debtor in Possession for Approval of its Selection and Retention of Attorneys under section 327(a) of the United States Bankruptcy Code, 11 U.S.C. section 101 *et seq.* In the application, debtor Capen Wholesale, Inc. sought approval of its retention of its long-standing counsel, D'Ancona & Pflaum, to represent it in bankruptcy. The U.S. Trustee objected, asserting that retention of D'Ancona & Pflaum would violate the disinterestedness standard set forth in section 101(14)(D) of the Code. For the reasons stated below, the March 11, 1994 Bankruptcy Court Order disqualifying D'Ancona & Pflaum is reversed.

### Background

Capen is a small wholesale distributor of building materials. From 1984 to February 1994, Capen employed the Chicago law firm of D'Ancona & Pflaum ("D'Ancona") as its primary legal counsel. Walter Roth, a D'Ancona partner, was Capen's principal contact at the firm. In 1984, Roth was appointed as Capen's assistant secretary. In an affidavit submitted in support of Capen's application to retain D'Ancona as bankruptcy counsel, Roth stated that he was appointed to facilitate the execution of Capen's legal documents, and that he never took any action as assistant secretary during the ten years he held the position. On February 9, 1994, two weeks before Capen filed its voluntary Chapter 11 bankruptcy petition, Roth resigned from his unpaid position as assistant secretary for Capen.

On February 25, 1994, Capen formally asked the bankruptcy court to approve D'Ancona as counsel during the bankruptcy proceedings. Appellee, the U.S. Trustee, objected, and following two hearings, the bankruptcy court denied Capen's application. Capen appeals.

### Discussion

*Jurisdiction*

■ Just ten days ago, long after this appeal was fully briefed, and even after appellant's chapter 11 plan was confirmed, the U.S. Trustee moved to dismiss the appeal for lack of jurisdiction. In support of its motion to dismiss, the Trustee cites in *In re Firstmark Corp.,* 46 F.3d 653 (7th Cir.1995) and *In re Devlieg, Inc.,* 56 F.3d 32 (7th Cir.1995), where the Seventh Circuit has recently held

that an order disqualifying counsel under section 327(a) of the Bankruptcy Code is not a final order, appealable as a matter of right under 28 U.S.C. section 158(a). The motion to dismiss is denied.

As Capen points out, section 158(a) provides district courts of the United States with jurisdiction to hear interlocutory appeals from bankruptcy court orders at their discretion. *See In re Szekely,* 936 F.2d 897, 899 (7th Cir.1991).[1] Although section 158(a) is silent on the question of how this discretion is to be exercised, courts often look to the factors set forth in 28 U.S.C. section 1292(b) defining the scope of appellate jurisdiction over interlocutory appeals from the district courts. *See, e.g., Sterling Supply Corp. v. Mullinax,* 154 B.R. 660 (E.D.Pa.1993); *In re Lifschultz Fast Freight Corp.,* 127 B.R. 418 (N.D.Ill.1991); *In re Bowers–Siemon Chemicals Co.,* 123 B.R. 821, 824 (N.D.Ill.1991). These factors include whether the appeal involves a controlling question of law, whether there is a substantial basis for a difference of opinion, and whether the resolution of the question of law would material advance the ultimate termination of the litigation. 28 U.S.C. section 1292(b).

The question of law at issue here is not "controlling" in the traditional outcome-determinative sense of the word. Still, as clearly recognized by the parties and the bankruptcy court itself, the question presented is an important one, which could have significantly affected the bankruptcy proceedings below. Other courts have viewed this issue similarly. In *In re Sharpe,* 98 B.R. 337, 338 (N.D.Ill.1989), for example, the district court cited a disqualified attorney's long-standing relationship with its debtor client as a critical factor in its decision to grant leave to appeal. Additionally, as evidenced by the court's decision to reverse, the legal issues raised in this appeal can give rise to substantial differences of opinion. Finally, given the fact that the underlying bankrupt-

cy proceeding is all but concluded, and in light of the considerable time and energy already invested in this appeal, the court finds that considerations of judicial economy and efficiency also weigh heavily in favor of exercising appellate jurisdiction. Accordingly, the court denies the Trustee's motion to dismiss the appeal, and hereby grants debtor leave to appeal.

*Disqualification*

■ The Bankruptcy Code authorizes debtors-in-possession like Capen to employ attorneys to represent them, with the court's approval. 11 U.S.C. Section 327(a), 1101.[2] With a few minor exceptions that do not apply here, the Code allows debtors in possession to "employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that *do not hold or represent an interest adverse to the estate, and that are disinterested persons,* to represent or assist [them] in carrying out [their] duties . . . ." 11 U.S.C. Section 327. (emphasis added). There is no suggestion here that D'Ancona or Roth have held or represent interests adverse to the estate. The only issue on appeal is whether Roth and his firm are "disinterested persons", as those terms are defined under the Code.

Section 101(14) of the Code defines a disinterested person as one who is *not* one of the following:

(A) a creditor, an equity security holder, or an insider

(B) [a present or former] investment banker for any outstanding security of the debtor

(C) . . . within the three years preceding the filing of the bankruptcy petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor

---

1. Although Capen neglected to ask the court for leave to appeal, Bankruptcy Rule 8003(c) allows district courts to consider timely filed notices of appeal as motions for leave to appeal. The court will therefore treat the notice of appeal in this case as a timely request for leave to appeal.

2. Section 327, on its face, only applies to trustees. Under section 1107, however, debtors in possession have all the rights and duties of a trustee. Thus, as numerous courts have found, section 1107 allows a debtor in possession to employ its own attorney, with the court's approval.

(D) ... within two years before the date of the filing of the petition, *a director, officer or employee of the debtor* or of an investment banker specified in (B) or (C) above

(E) [someone] with an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in (B) or (C) above.

11 U.S.C. Section 101(14). Subsection (D), with its reference to current and recent officers of the debtor, is the only category of "non-disinterested" persons implicated here. With respect to Roth, the question therefore becomes, whether his appointment as assistant secretary marked him as an officer of the debtor, and thus disqualified from representing Capen under the Code.

■ The Bankruptcy Code does not define the key term "officer". In light of the Code's silence, the bankruptcy court sensibly looked to Illinois corporate law to determine who qualifies as an officer (or former officer) of a bankrupt Illinois corporation. Under Illinois law, specifically, Section 8.50 of the Business Corporation Act, the corporation's by-laws are controlling:

A corporation shall have such officers as shall be provided in the by-laws, each of whom shall be elected by the board of directors at such time and in such manner as may be prescribed by the by-laws. Officers and assistant officers and agents as may be deemed necessary may be elected or appointed by the board of directors or chosen in such other manner as may be prescribed by the by-laws.

805 ILCS 5/8.50. *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill.2d 208, 170 N.E.2d 131 (1960), is particularly illuminating. In *Gidwitz*, plaintiff had challenged a decision by defendant Lanzit's president to increase the salary of two of Lanzit's assistant secretaries. Noting that Lanzit's by-laws restricted the

determination of officers' compensation to the company's board of directors, plaintiff argued that Lanzit's president had overstepped his authority. *Id.* 170 N.E.2d at 131. The Illinois Supreme Court agreed. Looking solely to the corporation's by-laws, the court found that assistant secretaries were officers "as provided by Section 1 of Article IV of the bylaws." *Id.*

Looking to Capen's bylaws, the court agrees with the bankruptcy court's determination that Roth, though just an assistant secretary, was indeed an officer of the corporation. As appellee notes, the position of assistant secretary is set forth in Section 8, Article 4 of the bylaws—the article dealing expressly with "officers". Like other officers of the corporation, Capen's assistant secretary must be appointed by its board of directors. Certain official duties are prescribed as well. Thus, despite the fact that Roth never actually performed any duties as assistant secretary, he qualified as an officer under Illinois law.[3] Because Roth acted as an officer of the debtor within two years of the filing of Capen's bankruptcy petition, he was properly disqualified as a non-disinterested person under section 327(a).

Having concluded that Roth was disqualified from representing Capen in bankruptcy, the bankruptcy court found that Roth's law firm, D'Ancona, must also be disqualified. In so finding, the bankruptcy court followed the lead of other bankruptcy courts who, relying in part on the Model Rules of Professional Conduct, have imputed the disqualification of one attorney under Section 327(a) to his or her entire firm. *See, e.g., In re Envirodyne Indus.*, 150 B.R. 1008, 1017–18 (Bankr. N.D.Ill.1993) (citing *In re Tinley Plaza*, 142 B.R. 272, 276–77 (N.D.Ill.1992)).

The Rules of Professional Conduct, however, do not require D'Ancona's disqualification. Rule 1.10(a) of the Illinois Rules of Professional Conduct, which governs imputed disqualification provides:

---

**3.** Capen's hair-splicing distinction between assistant officers and officers is unpersuasive. Capen's by-laws, which control here, do not distinguish between assistant officers and officers. Nor do other courts that have considered this issue. *See, e.g., In re Wells Benrus Corp.*, 48 B.R. 196 (Bankr.D.Conn.1985); *In re Creative Restaurant Management, Inc.*, 139 B.R. 902 (Bankr. W.D.Mo.1992).

No lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so by Rules 1.7, 1.8(c) or 1.9.

Rules of Professional Conduct for the Northern District of Illinois, Rule 1.10(a). Rules 1.7, 1.8, 1.9, in turn, each involve conflicts of interest. Critically, none of the conflicts of interest contemplated in Rules 1.7, 1.8, and 1.9 are implicated here. Reference to the Model Rules alone does not require the court to impute Roth's disqualification under the Code to his firm.

A more thorough, and ultimately more convincing, analysis of imputed disqualification under section 327(a) was provided by the court in *In re Creative Restaurant Management Inc.*, 139 B.R. 902, 913 (W.D.Mo.1992). The underlying facts in *Creative Restaurant* parallel this case closely. Both involve applications by firms to proceed as bankruptcy counsel where one of the firm's partners had previously served as the debtor's assistant secretary. Also, in both cases, the former assistant secretary was not going to participate in the representation of the debtor in bankruptcy.

In holding that the former assistant secretary's law firm was not disqualified, the *Creative Restaurant* court first turned to the Code itself, noting that nothing in the Code, particularly sections 101(14) and 327(a), requires imputed disqualification. *Id.* at 913. Moreover, as the court observed, Congress could easily have provided for imputed disqualification if it had intended for it, having specifically done so in Bankruptcy Rule 5002(a). *Id.*

The court then examined whether, as a result of the partner's prior service as an officer for the debtor, and the firm's prior representation of the debtor, the law firm held an interest "materially adverse" to those of the debtor. *Id.* at 914. As noted above, holding a material interest adverse to the debtor is an independent ground for disqualification under section 101(14)(E). Concluding that the law firm did not hold any material interests adverse to the debtor, the court permitted the law firm to proceed as bankruptcy counsel.

A similar rationale holds here. Although Roth clearly is disqualified as a "non-disinterested person" under section 327(a), nothing in the Code or the Rules of Professional Conduct suggests that other lawyers at his firm must be viewed identically. In that Roth has: 1) resigned as assistant secretary, 2) never actually performed any duties while assistant secretary, and 3) will not participate in the bankruptcy proceeding, D'Ancona's continued representation of its longstanding client, Capen, does not, in this court's view, raise even the slightest appearance of impropriety, let alone the material adverse interest required under section 101(14)(E). The court therefore reverses the Bankruptcy Court's March 11, 1994 Order denying Capen's application to employ the law firm of D'Ancona & Pflaum as its counsel under 11 U.S.C. section 327(a). Attorney Roth, however, continues to be disqualified and shall not participate in any way in the bankruptcy proceedings.

### Conclusion

For the foregoing reasons, the March 11, 1994 Bankruptcy Court Order disqualifying D'Ancona & Pflaum is reversed.