**In re TIMBER CREEK, INC., Debtor.**

**Bankruptcy No. 95–28309–K.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Oct. 12, 1995.

William Thomas Newton, Glankler Brown Law Firm, Memphis, TN, for debtor.

Ellen B. Vergos, United States Trustee, Region 8, Julie C. Chinn, Assistant United States Trustee, Memphis, TN.

## MEMORANDUM RE DEBTOR'S APPLICATION TO EMPLOY ATTORNEYS PURSUANT TO 11 U.S.C. § 327(a) AND OBJECTION THERETO FILED BY THE UNITED STATES TRUSTEE

DAVID S. KENNEDY, Chief Judge.

This Memorandum presents the narrow question whether the disqualification of one partner in a law firm for lack of "disinterestedness" under 11 U.S.C. § 327(a) [1] should be imputed to the entire law firm where a chapter 11 debtor-in-possession ("DIP") seeks to employ that law firm to represent or assist it in carrying out the DIP's statutory duties under the Bankruptcy Code.

This is a core proceeding by virtue of 28 U.S.C. § 157(b)(2)(A). The following shall constitute the court's findings of fact and conclusions of law in accordance with FED. R.BANKR.P. 7052.

The relevant background and controlling facts that underlie this controversy are not in dispute, although the legal import or effect to be given those facts is very much controverted. The relevant background facts may be very briefly summarized as follows. In this chapter 11 case the DIP seeks to employ the Glankler Brown law firm of Memphis, Tennessee ("Glankler Brown") pursuant to 11 U.S.C. § 327(a). Mr. Michael A. Robinson, Esquire, a partner in Glankler Brown, ("Mr. Robinson") also is a shareholder in the DIP's holding corporation and a director for both the DIP and its parent corporation. In reality, Mr. Robinson's actual prepetition involvement in such corporate capacities was very minimal. The only secured creditor supports the DIP's instant application to employ Glankler Brown.

Unquestionably, Mr. Robinson himself cannot, nor does he seek to, meet the "disinterestedness" requirements to be employed to represent the DIP under 11 U.S.C. § 327(a). He is directly and admittedly disqualified. The unanswered question here is whether Mr. Robinson's lack of disinterestedness should be imputed on a *per se* basis to the *entire* Glankler Brown law firm, thereby vicariously disqualifying the law firm as a whole from being employed by the DIP. Glankler Brown consists of approximately 50 attorneys.

---

1. 11 U.S.C. § 327(a) is styled "Employment of professional persons" and provides in subsection (a) as follows:

 (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate and that are *disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title. (emphasis added).

■ The United States Trustee for Region 8, the only objector, strongly opposes the DIP's section 327(a) application seeking to employ Glankler Brown and cites several published opinions which indeed stand for the proposition that the disqualification of one partner in a law firm acts to disqualify on a *per se* basis the entire law firm from representing the DIP. Ordinarily, a DIP (or trustee) may select his or her own attorney (with certain prohibitions). The cases which the United States Trustee cites, pursuant to its broad standing under 11 U.S.C. § 307, are *In re Wells Benrus Corp.*, 48 B.R. 196 (Bankr.D.Conn.1985); *In re Michigan Interstate Railway Co., Inc.*, 32 B.R. 327 (Bankr. E.D.Mich.1983); *In re SIS Corp.*, 97 B.R. 361 (Bankr.N.D.Ohio 1989); and *In re Swansea Consolidated Resources, Inc.*, 155 B.R. 28 (Bankr.D.R.I.1993). In addition, see the following reported opinions: *In re Envirodyne Indus.*, 150 B.R. 1008, 1017–18 (Bankr. N.D.Ill.1993) and *In re Tinley Plaza*, 142 B.R. 272, 276–277 (N.D.Ill.1992).[2] These cases hold that disqualification of one partner in a firm necessarily results in the disqualification of the entire firm.[3] The *Wells Benrus, Michigan Interstate Railway, Envirodyne,* and *Tinley Plaza* opinions based their respective holdings at least in part on ethical principles found in the Model Rules of Professional Conduct.

In *Wells Benrus* the court stated that "[i]t is not uncommon for attorneys to be indirectly disqualified from representing a client when they are associated with other attorneys who are directly disqualified." *Wells Benrus,* 48 B.R. 196 at 198 (citing the MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 5–105(D)). Disciplinary Rule 5–105(D) of the Model Code of Professional Responsibility provides as follows: ....

(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with that lawyer or that lawyers law firm, may accept or continue such employment.

MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 5–105(D).

Tennessee has adopted the Model Code of Professional Responsibility in TENN.SUPREME COURT RULE 8 (1995).

DR 5–105(D) has been tempered over time by the "Chinese Wall" concept. *See generally,* CHARLES W. BONE & KEITH C. DENNAN, *The Chinese Wall: Conflicts of Interest and Imputed Disqualification,* 25 TENN. B.J. 24 (May/June 1989). The Sixth Circuit also has embraced and adopted this concept in *Manning v. Waring, Cox, James, Sklar, & Allen,* 849 F.2d 222 (6th Cir.1988). In *Manning* the Sixth Circuit stated that the realities of the modern practice of law require the court to balance the interests at stake when considering motions to vicariously disqualify attorneys. *Manning,* 849 F.2d 222 at 225. The Sixth Circuit also provided several factors that courts should evaluate in determining whether sufficient "screening mechanisms" or "curative measures" have been employed in a particular case to insure that no violation of, for example, client confidences occurs. These factors include the following:

"the size and structural divisions of the law firm, the likelihood of contact between the 'infected' attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the 'infected' attorney from access to relevant files or other information pertaining to the present litigation, or which prevent him from sharing in the fees derived from such litigation."

*Manning,* 849 F.2d 222 at 225–226 (citing *Schiessle v. Stephens,* 717 F.2d 417, 421 (7th Cir.1983)).

Tennessee has expressly adopted the *Manning* and *Schiessle* holdings in Formal Ethics Opinion 89–F–118. In Formal Ethics Opinion 89–F–118, the Tennessee Board of Professional Responsibility specifically adopted the above-mentioned factors as "appropriate for consideration in determining whether

---

2. Compare and distinguish *In re Middleton Arms, Ltd. Partnership,* 934 F.2d 723 (6th Cir.1991); *In re Eagle–Picher Indus., Inc.,* 999 F.2d 969 (6th Cir.1993); and *In re Federated Dept. Stores, Inc.,* 44 F.3d 1310 (6th Cir.1995).

3. FED.R.BANKR.P. 9001(6) provides that " '[f]irm' includes a partnership or professional corporation of attorneys or accountants."

'specific institutional screening mechanisms' have been implemented 'to effectively insulate against any flow of confidential information from the quarantine [person]' to other members of his or her ... firm...." Formal Ethics Op. 89–F–118 (Mar. 10, 1989) reprinted in TENNESSEE ETHICS HANDBOOK 171. The Board of Professional Responsibility went on to state that "[a]t a minimum, screening mechanisms should prohibit discussion of sensitive matter, limit circulation of sensitive documents, and restrict access to files." *Id.*

In contrast to the opinions cited by the United States Trustee there are at least two published opinions which hold that disqualification of one member of a law firm for lack of disinterestedness does not necessarily or *ipso facto* result in the vicarious disqualification of the entire law firm. In *Capen Wholesale, Inc. v. Michel (In re Capen Wholesale, Inc.)*, 184 B.R. 547 (N.D.Ill.1995), the district court held that a law firm would not be disqualified from representing a chapter 11 debtor-in-possession despite the fact that one of the partners in that law firm was disqualified due to his lack of disinterestedness resulting from his having served as an assistant secretary for the debtor-in-possession prior to the filing of the bankruptcy petition. The district court held that the Rules of Professional Conduct did not require disqualification of the entire law firm. *Capen*, 184 B.R. 547 at 550. Illinois has adopted the Model Rules of Professional Conduct rather than the Model Code of Professional Responsibility which Tennessee employs; however, the import of Rule 1.10(a) of the Illinois Rules of Professional Conduct is identical to that of the Tennessee provisions. Rule 1.10(a) provides as follows:

> "No lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so...."

ILLINOIS RULES OF PROFESSIONAL CONDUCT Rule 1.10(a).

The court in *Capen* also held that there is no language in the Bankruptcy Code requiring such imputed disqualification. *Capen*, 184 B.R. 547 at 551.

The court in *Capen* relied heavily upon an earlier opinion from the Western District of Missouri styled *In re Creative Restaurant Management, Inc.*, 139 B.R. 902 (Bankr. W.D.Mo.1992). Like *Capen*, *Creative Restaurant Management* involved a partner who had served as secretary to the debtor-in-possession prior to the filing of the chapter 11 case. The court held that the entire law firm was not disqualified, even though one of the members of the firm was clearly ineligible for employment due to his lack of disinterestedness. The court noted that there was no language in the Bankruptcy Code itself requiring such a *per se* result. *Creative Restaurant Management*, 139 B.R. 902 at 913. Looking to the "plain meaning" of the Bankruptcy Code, the court found that the Congress could have created a *per se* rule vicariously disqualifying law firms based on the lack of disinterestedness of one member, if it had so desired. *Id.* The court also noted that in FED.R.BANKR.P. 5002(a) just such a vicarious disqualification provision was included, but was noticeably absent elsewhere in the Bankruptcy Code or Rules. Most succinctly, the court made the following statement:

> "[W]here the intent of the statute clearly mandates application of a *per se* rule of ineligibility, for example where a professional has been an officer of the debtor within two years prior to the filing of the case, *Pierce* [809 F.2d·1356 (8th Cir.1987) ] says that person is automatically ineligible to represent the debtor under section 327(a). This is precisely why Mr. Butts [the attorney who served as corporate secretary] is ineligible to participate in these bankruptcy proceedings postpetition. However where, as here, the statute is silent as to eligibility of the entire firm, the bankruptcy court must determine within its discretion whether there is a materially adverse interest, without reference to a *per se* rule."

*Creative Restaurant Management*, 139 B.R. 902 at 914.

Based on the foregoing and the court's independent review of the relevant provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, it appears that

there is no express or *per se* prohibition within the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure requiring an entire law firm to be disqualified from representing a DIP (or trustee) simply because one member of the firm would be ineligible for employment for lack of disinterestedness. The *Manning* and *Schiessle* opinions and the Tennessee Formal Ethics Opinion 89–F–118 countenance the "Chinese Wall" concept as it relates to conflicts of interest and provide a detailed laundry list of certain mechanisms which can be implemented to ensure adequate screening to avoid the problems which might otherwise lead to disqualification. It appears that if certain appropriate steps are taken, there are no *per se* legal or ethical impediments to the approval of the retention of Glankler Brown to represent the DIP. That is, an "infected" attorney may under appropriate circumstances be "quarantined" via proper screening or curative procedures as a viable alternative method to avoid vicarious disqualification of the entire law firm because of one "tainted" attorney. Bankruptcy statutory words cannot be read with the ease of a computer. *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)

Daniel R. Cowans' BANKRUPTCY LAW AND PRACTICE provides in relevant part here as follows:

> "Curative measures may be imposed by the court as an alternative to barring counsel ·who have previously represented the debtor corporation. These measures may include ordering counsel to resign any positions he or she may have with the debtor; forbidding counsel from attending meetings of the debtor's board of directors; reserving to the court the right to monitor fees; and requiring counsel to advise the court of any further conflicts."

3 Daniel R. Cowans, BANKRUPTCY LAW AND PRACTICE, § 17.11, p. 362 (6th ed. 1994) (footnote omitted).

Similarly, here, Mr. Robinson has agreed, *inter alia,* to resign from his respective corporate positions with the DIP and the parent corporation and further has agreed to refrain from attending any meetings of the DIP or in any way participating in the DIP's affairs.

It also is noted that this court has the right to monitor professional fees. Moreover, the court has an independent duty to scrutinize professional fee applications. *See, e.g., In re Busy Beaver Bldg. Ctrs.,* 19 F.3d 833 (3d Cir.1994); 11 U.S.C. § 330(a)(2). Additionally, the court has required counsel to advise the court and the United States Trustee of any further conflicts.

To the extent that the cases cited by the United States Trustee rely upon the ethical considerations found in the MODEL CODE OF PROFESSIONAL RESPONSIBILITY or the MODEL RULES OF PROFESSIONAL CONDUCT, this court nonetheless is persuaded that the Sixth Circuit's *Manning* opinion and Formal Ethics Opinion 89–F–118 do not require, under the realities of the modern practice of law, the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure, the *per se* vicarious disqualification of an entire law firm solely because one partner is ineligible for employment. *See also In re Capen Wholesale, Inc., supra,* and *In re Creative Restaurant Management, Inc., supra.*

■ Considering a totality of the particular facts and circumstances and applicable law, this court accordingly concludes that the obvious and admitted disqualification of Mr. Robinson for lack of disinterestedness under sections 327(a) and 101(14) does not necessarily or *ipso facto* result in the per se vicarious disqualification of the entire Glankler Brown law firm. In other words, lack of disinterestedness of one partner should not be imputed on a *per se* basis to all the remaining partners in a law firm provided that sufficient "screening mechanisms" or "curative measures" are implemented to prevent or insulate against the flow of, for example, confidential information. These measures also are designed to maintain and preserve the integrity of the bankruptcy system. Here, the DIP and Glankler Brown have erected an appropriate "Chinese Wall" in accordance with the measures discussed above. Additionally, the court is satisfied that no materially adverse interest exists.

■ Proceedings of this nature are subject to judicial discretion utilizing the totality of the circumstances test on a case-by-case ba-

sis; and the DIP (or trustee) has the burden of proof by a preponderance of the evidence standard to demonstrate that an appropriate "Chinese Wall" can be erected to effectively "quarantine" the law firm from the "infected" or "tainted" attorney.

 A separate order consistent with the foregoing has been entered pursuant to 11 U.S.C. § 327(a) employing Glankler Brown to represent the DIP.[4] FED.R.BANKR.P. 9021.

---

**4.** This result is also consistent with the so called entity theory, which the bankruptcy laws follow. A partner is a separate entity from the partnership. See, for example, *In re Ginsberg*, 219 F.2d 472 (3d Cir.1955). Stated differently, a partnership is a distinct legal entity, separate from the partners who comprise it. See, for example, *In re Dreske*, 25 B.R. 268 (Bankr.E.D.Wis.1982); and *In re Wallen*, 43 B.R. 408 (Bankr.D.Idaho 1984).