849 F.2d 222
 56 USLW 2721
 J. Frank MANNING, an individual, suing on his own behalf and
on behalf of all other persons similarly situated, Plaintiff,
Fort Deposit Bank, a corporation, Defendant and Third-Party
Plaintiff-Appellee,
v.
WARING, COX, JAMES, SKLAR AND ALLEN, a partnership composed
of Allen Cox, Jr., Roane Waring, Jr., Erick William James,
Robert Lee Cox, H. Sklar, Louis F. Allen, and Rodger D. Fish
as general partners, Third-Party Defendants-Appellants.
 No. 86-6239.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 13, 1987.
Decided June 9, 1988.
 
 James S. Cox, Memphis, Tenn., for third-party defendants-appellants.
 Carl H. Langschmidt, Jr., C. Kimbrough Brown (argued), Memphis, Tenn., for defendant and third-party plaintiff-appellee.
 Before MERRITT and NORRIS, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 The law firm of Waring, Cox, James, Sklar & Allen ("Waring, Cox"), third-party defendant, appeals from an order of the district court granting the motion of defendant and third-party plaintiff, Fort Deposit Bank, to disqualify the law firm of Heiskell, Donelson, Bearman, Adams, Williams & Kirsch ("Heiskell, Donelson") from serving as counsel for Waring, Cox in the claim brought against it by the bank. 619 F.Supp. 1327. Pursuant to 28 U.S.C. Sec. 1292(b), the district court certified the order for immediate appeal, and appeal was permitted by a panel of this court.
 
 
 2
 In 1972, the town of Grand Junction, Tennessee issued industrial revenue bonds to finance the construction of a manufacturing plant. Waring, Cox served as bond counsel to the town. The bonds were to be repaid through rents received by the town; payment was guaranteed by the two individuals who proposed to operate the manufacturing plant. These guarantors submitted financial statements which were circulated as an attachment to the prospectus.
 
 
 3
 An Oklahoma bank served as trustee for the bond issue. The bonds were marketed through underwriters, one of which was Fort Deposit Bank, of Fort Deposit, Alabama. In other words, Fort Deposit bought bonds from the Oklahoma bank and sold them to investors.
 
 
 4
 By October 1974, payment on the bonds was in default. In February 1975, the Oklahoma bank and Grand Junction filed a complaint in state court against the guarantors. An amended complaint added the bondholders as defendants (as a class), and sought a declaratory judgment that the Oklahoma bank had properly administered the bond issue. The bondholders counterclaimed against the Oklahoma bank and added Waring, Cox as a third-party defendant, alleging malpractice. Waring, Cox retained Memphis attorney Leo Bearman, Jr., of the Heiskell, Donelson firm, as counsel.
 
 
 5
 In February 1977, while the state court action was pending, this action against Fort Deposit Bank was filed in the same state court, as a class action by the bondholders who had purchased their bonds from Fort Deposit. The complaint alleged violations of state securities laws, including misrepresentation of the net worth of the guarantors. Fort Deposit removed the action to federal district court. Attorney Daniel Hatzenbuehler, of the law firm of Boone, Wellford, Clark, Langschmidt & Pemberton ("Boone, Wellford"), undertook Fort Deposit's representation. Action on this federal lawsuit was informally stayed pending the outcome of the state court action.
 
 
 6
 In the state court action, all claims were either settled or dismissed, with the exception of the one by the bondholders against Waring, Cox. The trial court awarded judgment to the bondholders, but the state court of appeals reversed on the ground that the claim against Waring, Cox had not been filed timely under the applicable statute of limitations. The Supreme Court of Tennessee affirmed. See Security Bank & Trust Co. v. Fabricating, Inc., 673 S.W.2d 860 (Tenn.1983), cert. denied sub nom. Podrog v. Waring, Cox, James, Sklar & Allen, 469 U.S. 1038, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984).
 
 
 7
 In April 1984, with Fort Deposit's knowledge, Hatzenbuehler joined Heiskell, Donelson, and the bank continued his employment as its counsel in this action. In October 1984, Fort Deposit decided it should join Waring, Cox as a third-party defendant, and Hatzenbuehler terminated his relationship with the bank. Boone, Wellford then undertook Fort Deposit's defense and, in December 1984, filed a third-party complaint alleging that Waring, Cox was liable to the bank for contribution should plaintiffs prevail against it, since Waring, Cox had served as bond counsel. Waring, Cox again retained Heiskell, Donelson. The bank then sought to disqualify Heiskell, Donelson as counsel for Waring, Cox, due to Hatzenbuehler's prior involvement with the case. Although the bank alleged that Hatzenbuehler was privy to its confidences and secrets as the result of his representation, it did not suggest that he had disclosed them.
 
 
 8
 Waring, Cox conceded that Hatzenbuehler's prior representation of the bank mandated his disqualification, but argued that the harsh remedy of disqualifying the entire law firm of Heiskell, Donelson was not warranted. Waring, Cox pointed out that Heiskell, Donelson was uniquely qualified to represent its interests in this lawsuit, in view of its representation throughout the prolonged state litigation, and, that to deny Waring, Cox that firm's services would result in substantial hardship. It also contended that as soon as Hatzenbuehler joined Heiskell, Donelson, efforts were undertaken to prevent disclosure of confidential information. The result, Waring, Cox contended, was that Hatzenbuehler was "screened" from Heiskell, Donelson's efforts on behalf of Waring, Cox, even before the bank asserted a claim against Waring, Cox, since Heiskell, Donelson was sensitive to the potential for future conflict between the two. Cited as factors which assured the success of the screening devices were the size of Heiskell, Donelson (at fifty lawyers, the largest in Tennessee); division of the firm into six departments with Hatzenbuehler serving in a different department than the attorney handling Waring, Cox's defense; a prohibition against communication between Hatzenbuehler and other members of the firm about the litigation; and segregation of Hatzenbuehler's files from other law firm files.
 
 
 9
 In its memorandum opinion, the district court thoroughly discussed the issues raised by the bank's motion, and noted that the bank was entitled to the benefit of a well-recognized presumption that the confidences in Hatzenbuehler's possession would be shared with other members of the firm. The court concluded that "Chinese wall" screening devices cannot rebut the presumption of shared confidences when the confidences were obtained by the "quarantined" lawyer from the former client while representing him in the same proceedings in which other members of the firm are now representing an opposing party. The district court also considered that disqualification of Heiskell, Donelson would not unduly prejudice Waring, Cox, since the litigation was in its early stages and Waring, Cox had ample resources to retain new counsel and prepare for trial.
 
 
 10
 This court has not been confronted previously with the precise issue raised by this appeal.[1] We conclude that the district court erred in holding that screening devices can never be effective to protect confidences under the circumstances presented above.
 
 
 11
 If the case reports are any indication, a motion to vicariously disqualify the law firm of an attorney who is himself disqualified as the result of his possession of the confidences of a former client, is becoming an increasingly popular litigation technique. Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice.
 
 
 12
 Perhaps these motions have become more numerous simply because the changing nature of the manner in which legal services are delivered may present a greater number of potential conflicts. Certainly, the advent of law firms employing hundreds of lawyers engaging in a plethora of specialties contrasts starkly with the former preponderance of single practitioners and small firms engaging in only a few practice specialties. In addition, lawyers seem to be moving more freely from one association to another, and law firm mergers have become commonplace. At the same time that the potential for conflicts of interest has increased as the result of these phenomena, the availability of competent legal specialists has been concentrated under fewer roofs.
 
 
 13
 Consequently, these new realities must be at the core of the balancing of interests necessarily undertaken when courts consider motions for vicarious disqualification of counsel.
 
 
 14
 A reading of the cases would lead one to believe that the maintenance of confidentiality has been accorded paramount effect. And this is understandable, given the traditional concerns of the legal profession that client confidences be protected[2] and that appearances of professional impropriety be avoided.[3] In addition, courts have frequently pointed to the prohibition against other lawyers in a firm accepting or continuing employment when a member of the firm has been required by ethical considerations to decline or withdraw from that employment.[4]
 
 
 15
 In our view, the Court of Appeals for the Seventh Circuit has taken the most realistic view of the methodology to be followed in resolving competing interests raised by such a disqualification motion.[5] Where, as here, it has been demonstrated that disqualification will work a hardship, it is clear that the quarantined lawyer was privy to confidential information received from the former client now seeking disqualification of the lawyer's present firm, and there is a substantial relationship between the subject matter of the prior and present representations, then the district court must determine whether the presumption of shared confidences has been rebutted. Specifically, under the circumstances of this case as presented by the parties on appeal, it must be determined whether the confidences which Hatzenbuehler acquired from the bank in the course of his prior representation and brought with him to Heiskell, Donelson, have been passed on, or are likely to be passed on, to members of the firm. Schiessle v. Stephens, 717 F.2d 417, 421 (7th Cir.1983). One method of rebutting the presumption is by demonstrating that specific institutional screening mechanisms have been implemented to effectively insulate against any flow of confidential information from the quarantined attorney to other members of his present firm. LaSalle Nat'l Bank v. County of Lake, 703 F.2d 252 (7th Cir.1983).
 
 
 16
 Such a determination can be based on objective and verifiable evidence presented to the trial court and must be made on a case-by-case basis. Factors appropriate for consideration by the trial court might include, but are not limited to, the size and structural divisions of the law firm involved, the likelihood of contact between the "infected" attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the "infected" attorney from access to relevant files or other information pertaining to the present litigation, or which prevent him from sharing in the fees derived from such litigation.
 
 
 17
 717 F.2d at 421 (citation omitted).
 
 
 18
 The efficacy of screening devices, under appropriate circumstances, has been recognized by the American Bar Association in the instance of lawyers who leave government service to enter private practice. Model Rules of Professional Conduct Rule 1.11 comment (1983); ABA Comm. on Ethics and Professional Responsibility, Formal Op. 342 (1975). In view of the changing nature of the availability of legal services which we have noted above, we see no reason why the considerations which led the American Bar Association to approve appropriate screening for former government attorneys, should not apply in the case of private attorneys who change their association.
 
 
 19
 The issue of disqualification was presented to the district court by the bank predicated upon a factual context in which no actual conflict in duties of legal representation arose until after Hatzenbuehler had joined Heiskell, Donelson and the bondholders' reactivation of the federal court action indicated to Hatzenbuehler that Fort Deposit should file a third-party claim against Waring, Cox. He then resigned as counsel for the bank, which then retained Boone, Wellford to file the third-party claim. In essence, these facts presented the classic question of whether the entire law firm should be disqualified by a conflict of interest presented by the fact that a member of the firm had represented a certain client prior to his joining the firm. These were the assumed facts then, when the district court held that the presumption of shared confidences was irrebuttable, and the asumed facts under which we conclude that the presumption is rebuttable, upon sufficient proof.
 
 
 20
 However, we are troubled by an indication in the record that these may not have been the actual facts; that a conflict may have arisen long before Hatzenbuehler joined Heiskell, Donelson. According to the "Memorandum in Opposition to Motion to Disqualify" submitted by Waring, Cox to the district court:
 
 
 21
 With this Federal Court action effectively stayed, Mr. Hatzenbuehler became somewhat involved in the [state court action] on behalf of Fort Deposit Bank, not yet a party to that suit. As such, he and Mr. Boone travelled to Fort Deposit, Alabama in September of 1977 and met with Bank officers and local counsel in order to determine whether Fort Deposit Bank, as a former bondholder, should opt into the class that counsel for the bondholders sought to have certified. Mr. Hatzenbuehler was informed by local counsel at that meeting for the first of many times that Fort Deposit was not interested in pursuing any third-party actions against any potential defendants, including bond counsel, Waring, Cox.
 
 
 22
 Following a meeting with Frank Bird, counsel for the bondholder class, Mr. Hatzenbuehler advised Fort Deposit to opt into the class and thus became more directly involved in the Hardeman County suit. From that point, Mr. Hatzenbuehler participated in some discovery depositions and received and reviewed all pleadings filed in the [state court] suit. He had discussions with Frank Bird and local counsel of Fort Deposit, and, to a much more limited extent, its President. He also prepared responses to interrogatories propounded to Fort Deposit and in doing so reviewed all documentation the Bank had on file in this matter.
 
 
 23
 The quoted material is confusing, because the same memorandum, when referring to Hatzenbuehler's joining Heiskell, Donelson in 1984, states that "[s]ince at that time Fort Deposit again indicated that they had no interest in pursuing possible claims against Waring, Cox, it was concluded that no conflict of interest would result." However, assuming that during 1977 or 1978 Fort Deposit did join the bondholders in the state lawsuit in pursuing their claim against Waring, Cox, then Fort Deposit and Waring, Cox became opposing litigants at that time. If this were the case, then the fact that Fort Deposit waited until December 1984 to pursue a third-party claim against Waring, Cox in the federal suit, would be largely irrelevant to resolving Heiskell, Donelson's disqualification. Hatzenbuehler's continued representation of Fort Deposit against Waring, Cox in the state action while a member of Heiskell, Donelson, would have conflicted with another firm member's representation of Waring, Cox.
 
 
 24
 At the time Hatzenbuehler moved to Heiskell, Donelson, the state court action, in which Heiskell, Donelson was defending Waring, Cox against the bondholders, had been decided in Waring, Cox's favor by the Tennessee Supreme Court, but the matter was not yet concluded. A petition for rehearing was pending before the Tennessee Supreme Court, which was not denied until July 9, 1984. A petition for certiorari was filed with the United States Supreme Court, and not denied until November 1984. See Security Bank & Trust Co. v. Fabricating, Inc., 673 S.W.2d 860 (Tenn.1983), cert. denied sub nom. Podrog v. Waring, Cox, James, Sklar & Allen, 469 U.S. 1038, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984).
 
 
 25
 If Hatzenbuehler represented Fort Deposit in a claim against Waring, Cox in the state court action, and he continued to represent the bank after he joined Heiskell, Donelson, then two attorneys in the same law firm were representing opposing parties in the state action, and an actual conflict of interests existed. It was conceded that Bearman and Hatzenbuehler, as members of the same firm, could not represent both Waring, Cox and Fort Deposit Bank once they became opposing litigants in the federal action.
 
 
 26
 Accordingly, upon remand, the district court should first determine whether Hatzenbuehler did in fact represent Fort Deposit in the state action in a claim against Waring, Cox. If that be the case, and an actual conflict existed, then the order of the district court disqualifying Heiskell, Donelson will stand affirmed, in the absence of a finding by the district court that Fort Deposit knowingly consented to the level of conflict then presented by the state court action[6] when it agreed to continue Hatzenbuehler's employment after he joined Heiskell, Donelson. Should the district court conclude that a conflict existed in the state court action, but that Fort Deposit consented, then that consent should serve as a waiver of any objections that arose before Fort Deposit filed its third-party complaint against Waring, Cox.
 
 
 27
 On the other hand, should the facts be found to be as represented by the bank before the district court and by the parties on appeal--that Hatzenbuehler did not represent Fort Deposit in the state action in a claim against Waring, Cox--then the district court should determine whether Waring, Cox can rebut the presumption of shared confidences. It first must be demonstrated by Waring, Cox that Hatzenbuehler, in fact, has not shared the bank's confidences with others at Heiskell, Donelson. If the court concludes that confidences have not been disclosed, then, pursuing the inquiry suggested by the Seventh Circuit, Waring, Cox must demonstrate that Hatzenbuehler and Heiskell, Donelson, in a timely fashion, implemented screening procedures which will be effective in preventing any disclosure of these confidences. Should Waring, Cox succeed in this demonstration, then the presumption of shared confidences will have been overcome and the motion for disqualification should be overruled. It should be noted that under this methodology the law's traditional concern for the sanctity of client confidences is maintained, since the former client is accorded a presumption of shared confidences which, if unrebutted, will dictate disqualification.
 
 
 28
 Should the district court later be made aware of legitimate concerns that confidences have been breached, it should conduct an appropriate inquiry to determine whether such a breach of confidence has in fact occurred.
 
 
 29
 This cause is remanded to the district court for further proceedings consistent with this opinion.
 
 
 30
 MERRITT, Circuit Judge, concurring in part and dissenting in part.
 
 
 31
 The majority opinion highlights the troubling factual inconsistencies that confront us in this case. I agree with the majority that the case must be remanded to the District Court for further factual inquiry. I also agree with the majority that if Heiskell, Donelson lawyers represented opposing parties in the state court action, the presumption that confidences have been shared should be irrebuttable.
 
 
 32
 I cannot agree, however, with the majority's resolution of the factual problem. The majority has essentially made alternative decisions--if the District Court finds one set of facts to be true, we affirm; if the District Court finds another set of facts to be true, we reverse and remand. These decisions are premature. While the legal rationale for both decisions may be sound, I do not think it is good judicial practice to decide an appeal when we do not know what the facts are. The problem with this case is that we do not have enough facts to make a concrete, principled decision. Until more facts are on the record, we should not decide the issue whether Heiskell, Donelson will be allowed to rebut the presumption that confidences have been shared. We should decline at this point to adopt the rebuttable presumption test of the Seventh Circuit in a case in which we may not be confronted with the issue.
 
 
 
 [1]
 In an earlier decision, we affirmed, without opinion, a decision of the District Court for the Northern District of Ohio which included dictum to the effect that the presumption of shared confidences should be rebuttable. City of Cleveland v. Cleveland Elec. Illuminating, 440 F.Supp. 193, 209-10 (N.D. Ohio 1976), aff'd without opinion, 573 F.2d 1310 (6th Cir.1977), cert. denied, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978)
 
 
 [2]
 See Model Code of Professional Responsibility Canon 4 (1981)
 
 
 [3]
 See Model Code of Professional Responsibility Canon 9 (1981)
 
 
 [4]
 DR 5-105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer
 ....
 (D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with him or his firm may accept or continue such employment.
 Model Code of Professional Responsibility DR 5-105 (1981).
 
 
 [5]
 For examples of opinions from other circuits approving the potential for use of screening devices to rebut the presumption of shared confidences, see Armstrong v. McAlpin, 625 F.2d 433 (2d Cir.1980) (en banc); Ez Paintr Corp. v. Padco, Inc., 746 F.2d 1459 (Fed.Cir.1984). See also Note, Federal Courts and Attorney Disqualification Motions: A Realistic Approach to Conflicts of Interest, 62 Wash.L.Rev. 863 (1987); Peterson, Rebuttable Presumptions and Intra-Firm Screening: The New Seventh Circuit Approach to Vicarious Disqualification of Litigation Counsel, 59 Notre Dame L.Rev. 399 (1984); Note, The Future of the Chinese Wall Defense to Vicarious Disqualification of a Former Government Attorney's Law Firm, 38 Wash. & Lee L.Rev. 151 (1981)
 
 
 [6]
 See Model Code of Professional Responsibility, Canon 5 (1981)