897 F.2d 530
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lupe ZARAGOZA, Plaintiff-Appellant,
v.
INTERNATIONAL UNITED AUTOMOBILE WORKERS (UAW), LOCAL 668,
Defendant-Appellee.
 No. 89-1148.
 United States Court of Appeals, Sixth Circuit.
 March 9, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 This is an appeal from the district court's order disqualifying the law firm of Fried, Gallagher & Associates from representing the plaintiff in this case. The sole issue before us is whether the district court conducted an adequate inquiry before deciding to disqualify the firm. We conclude that, in the circumstances, a more thorough inquiry is necessary and remand the case to the district court in order that such an inquiry may be undertaken.
 
 I.
 
 2
 Lupe Zaragoza works as a janitor for Local 668 of the United Automobile Workers in Saginaw, Michigan. In 1985, he was fired because he was suspected of stealing. He is a member of the Office and Professional Employees International Union ("OPEIU"), Local 393, and filed a grievance pursuant to the terms of his union's collective bargaining agreement with the UAW. OPEIU was represented by the law firm of Freid, Gallagher & Associates throughout its dispute with Local 668.
 
 
 3
 In November 1986 and April 1987, an arbitrator heard testimony on the matter. In January 1988, the arbitrator sided with Zaragoza and directed Local 668 to reinstate him with full back pay and retroactive benefits.
 
 
 4
 Local 668 reinstated Zaragoza and paid him a substantial sum of money. But, on April 25, 1988, Zaragoza filed a complaint in federal district court alleging that Local 668 had not paid all that was owed. Zaragoza claimed additional payments were due him relating to medical expenses, holiday pay, prepaid absence payments, and interest. The complaint was nominally a petition to enforce the arbitration award. OPEIU was named a co-plaintiff in the suit which was filed on Zaragoza's behalf by Freid, Gallagher & Associates.
 
 
 5
 On September 30, 1988, the district court learned that OPEIU had not agreed to be a co-plaintiff in the district court suit. It, therefore, dismissed Zaragoza's lawsuit but rejected Local 668's argument that Rule 11 sanctions should be levied. Rather, the court gave Zaragoza an option to refile his petition to enforce the arbitration award as a "hybrid Sec. 301 claim."
 
 
 6
 A "hybrid Sec. 301 claim" is an attempt by a union member to personally enforce an arbitration award when his union cannot, or will not, enforce it for him. A prerequisite to allowing the union member to bring such a suit is a showing that the union's failure or refusal to pursue the claim was the result of inadequate representation by the union. See Samples v. Ryder Truck Lines, Inc., 755 F.2d 881, 885 (11th Cir.1985).
 
 
 7
 The district court alluded to Freid, Gallagher & Associates' potential conflict in representing Zaragoza in a "hybrid Sec. 301 claim" when it said that the complaint "need not include a suit against his union; 'he [Zaragoza] need only allege, and eventually show, inadequate representation' " (quoting Samples, 755 F.2d at 887 n. 5.).
 
 
 8
 Zaragoza thereafter amended his complaint to make it a "hybrid Sec. 301 claim." Freid, Gallagher & Associates again represented him and immediately moved the court to permit it to continue to do so. The district court denied Fried, Gallagher & Associates' motion. The court stated its primary concern to be:
 
 
 9
 Freid & Associates represented Plaintiff Zaragoza in the grievance process about which Plaintiff Zaragoza now must complain to effectively assert a Sec. 301 claim. If Freid & Associates continues to represent Plaintiff Zaragoza, the law firm will be forced to attack its own representation of Zaragoza in the grievance process as inadequate or improper.
 
 
 10
 Moreover, said the court, "[The Freid, Gallagher & Associates attorney representing Zaragoza] conceded ... that he (and perhaps other members of his firm) will necessarily have to act as a witness if the 'hybrid' Sec. 301 claim goes to trial." This would violate, said the court, Michigan Rule of Professional Conduct 3.7(a).
 
 
 11
 On January 19, 1989, the district court certified for immediate interlocutory appeal its order disqualifying the law firm. The district court reasoned that the disqualification, rendered without a hearing because it "was fully informed of the relevant facts on the basis of an earlier testimonial hearing," raised a legal question regarding the requirements of Manning v. Waring, Cox, James, Sklar and Allen, 849 F.2d 222 (6th Cir.1988). The court read the "letter" of the Manning case to require a hearing as a prerequisite to deciding any disqualification motion but claimed that its ruling complied with Manning 's "spirit."
 
 
 12
 Conforming its certification to the requirements of 28 U.S.C. Sec. 1292(b), the district court said its order raises a "controlling question of law" because Zaragoza "has been unable to obtain substitute counsel despite his efforts," and "has neither the legal acumen nor the intellectual capacity to adequately represent himself in this case." The court said immediate appeal "may materially advance the ultimate termination of the litigation" because:
 
 
 13
 Zaragoza's attempt to retain his counsel is tantamount to a dispositive issue. He ostensibly cannot represent himself in any respect, and no other attorney is willing to take his case.
 
 
 14
 Hence, the only issue for review is whether the district court undertook an adequate inquiry as required by Manning before disqualifying Fried, Gallagher & Associates from representing the appellant in his "hybrid Sec. 301 claim."
 
 II.
 
 15
 In Manning v. Waring, Cox, James, Sklar and Allen, 849 F.2d 222 (6th Cir.1988), the law firm of Waring, Cox, James, Sklar and Allen ("Waring, Cox"), as a third-party defendant, appealed a district court order granting the motion of defendant and third-party plaintiff, Fort Deposit Bank ("Fort Deposit"), to disqualify the law firm of Heiskell, Donelson, Bearman, Adams, Williams & Kirsch ("Heiskell, Donelson") from representing Waring, Cox in a suit brought by Fort Deposit. Fort Deposit, one of the underwriters in a municipal revenue bond plan gone awry, had sought contribution from Waring, Cox, the bond counsel to the municipality. Fort Deposit moved to disqualify Heiskell, Donelson on the ground that an attorney who recently joined that firm had formerly represented Fort Deposit in prior litigation on the same matter. Fort Deposit alleged that the attorney was privy to confidential information but did not claim that he had disclosed that information to other attorneys at Heiskell, Donelson. Consequently, this court remanded the case for further factual findings with the instruction:
 
 
 16
 Should the district court later be made aware of legitimate concerns that confidences have been breached, it should conduct an appropriate inquiry to determine whether such breach of confidence has in fact occurred.
 
 
 17
 Id. at 227-8 (emphasis added). In the only statement that can be interpreted as its holding, this court said:
 
 
 18
 We conclude that the district court erred in holding that screening devices can never be effective to protect confidences under the circumstances presented above.
 
 
 19
 Id. at 224.
 
 
 20
 The broadest reading of Manning supports the proposition that the presumption of shared confidences within a law firm may be rebutted. Id. at 225. Accord City of Cleveland v. Cleveland Elec. Illuminating, 440 F.Supp. 193, 209 (N.D.Ohio 1976), aff'd, 573 F.2d 1310 (6th Cir.1977), cert. denied, 435 U.S. 996 (1978). Contrary to the appellant's interpretation of Manning, however, no "hearing" is mandatory in alleged conflict situations.
 
 
 21
 However, Manning does suggest that before a court may disqualify an attorney from representing one of the parties to a case before it on the basis of potential shared confidences, the court must inquire into the likelihood of ethical compromise. We conclude that the district court failed to adequately undertake this inquiry regarding Freid, Gallagher & Associates' representation of Zaragoza in his "hybrid Sec. 301 claim" after members of the firm handled the grievance procedure on behalf of OPEIU.
 
 
 22
 As noted, the district court stated two reasons for issuing its disqualification order: the firm will have to attack its own representation in the hybrid Sec. 301 claim, and the firm's attorneys may have to testify at trial. The court based its reasoning on facts elicited at the hearing resulting in the September 30, 1988 order. That hearing dealt with OPEIU's dismissal, the Local's Fed.R.Civ.P. 11 motion, and the possibility of Zaragoza refiling a hybrid Sec. 301 claim. This demonstrates that the district court was aware of a potential conflict of interest for Freid, Gallagher & Associates, but it does not show that the court considered whether the firm was involved in a conflict warranting disqualification.
 
 
 23
 Zaragoza raises a number of issues which it claims could assist the district court in evaluating whether Freid, Gallagher & Associates rebutted the presumption favoring disqualification: 1) that the September hearing to elicit facts regarding safeguard measures the firm could take in asserting the hybrid Sec. 301 claim was insufficient; 2) that OPEIU's alleged breach of fair representation occurred subsequent to the termination of the attorney-client relationship it had with Freid, Gallagher & Associates; and 3) that OPEIU does not now object to Freid, Gallagher & Associates' carrying on Zaragoza's hybrid Sec. 301 claim.
 
 
 24
 Michigan Rule of Professional Conduct 1.9 states:
 
 
 25
 A lawyer who has formerly represented a client in a matter shall not thereafter:
 
 
 26
 (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
 
 
 27
 (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.
 
 
 28
 It is unclear whether Zaragoza's hybrid Sec. 301 claim against Local 668 involves interests "materially adverse" to those of OPEIU even if Zaragoza must show OPEIU wrongly chose not to pursue Zaragoza's claim. Moreover, the fact that OPEIU is allegedly willing or has already agreed to "consent after consultation" to Freid, Gallagher & Associates' representing Zaragoza in this matter warrants examination. This is a broader and, we think, more appropriate inquiry than the court has previously undertaken.
 
 III.
 
 29
 The district court's disqualification order is VACATED and the case is REMANDED for a hearing on the disqualification issue.