Robert W. KEARNS, Plaintiff,

v.

CHRYSLER CORPORATION and American Motors Corporation, Defendants.

No. 82–70748.

United States District Court, E.D. Michigan, S.D.

July 31, 1991.

William O. Bittman, John F. Dienelt, Richard L. Aitken, Washington, D.C., for plaintiff.

Richard A. Salomon, Rosanne J. Faraci, Chicago, Ill., Robert P. Taylor, San Francisco, Cal., for defendants.

MEMORANDUM AND ORDER

COHN, District Judge.

I.

This is a patent case. Now before the Court is the motion of plaintiff Robert W.

Kearns (Kearns) styled "Motion to Disqualify Counsel for Defendants," seeking to disqualify the law firm of Harness, Dickey, and Pierce (HDP) from representing defendants Chrysler Corporation (Chrysler) and American Motors Corporation (AMC). Kearns argues that because he was represented by HDP from 1977 to 1979, attorneys Bernard Cantor (Cantor), Robert Nolan (Nolan), and Gary Newtson (Newtson) who became members of HDP in 1988 and 1990 cannot represent Chrysler in this action. In response, Chrysler and AMC say that Cantor, Nolan, and Newtson should not be disqualified. They do not discuss whether HDP should be disqualified. Specifically, they argue that: 1) Kearns consented to the representation; 2) Kearns's motion is not timely; 3) HDP has made full disclosure and set up an elaborate Chinese wall preventing Cantor, Nolan, and Newtson from obtaining any confidential information; and 4) disqualification of Cantor, Nolan, and Newtson at this stage of the case would inflict undue hardship.

## II.

The following facts are undisputed. Members of HDP began providing Kearns with legal advice in 1977. Michael Dinnin, a former partner at HDP, conducted an analysis of Ford intermittent windshield wiper (IWW) circuits and, in an opinion letter dated January 3, 1978, concluded that Ford had infringed Kearns's IWW system patents. Later in 1978, Dinnin and two associates, Richard Carlson and Jeffrey Sadowski, filed lawsuits on behalf of Kearns against Ford Motor Company, Porsche A.G., and Daimler–Benz A.G. for infringement of his IWW patents. HDP's representation of Kearns ended in May 1979. At that time, a provisional lien in the amount of $34,511 was granted to HDP in the Ford suit for professional services rendered after November 1977. In April 1991, HDP agreed to waive and discharge the lien. At a hearing on July 25, 1991, the Court entered an order discharging the lien.

Cantor, Nolan, and Newtson were not affiliated with HDP at the time that it represented Kearns. Indeed, HDP's personnel have changed significantly since that time. HDP has doubled in size. Fewer than a dozen present partners were affiliated with the firm during the Kearns representation, and all of the present associates joined HDP after its representation of Kearns ended.

While a member of another firm, Cantor was counsel of record for General Motors Corporation, Honda Motor Co., Ltd., Fuji Heavy Industries, Ltd., Isuzu Motors Limited, and Group Lotus Cars Company, PLC in patent infringement cases brought by Kearns involving his IWW system patents. Cantor entered an appearance in those cases in 1985. Nolan was an associate at Cantor's firm, working with him on the cases.

Cantor and Nolan joined HDP on November 4, 1988. At that time, a screen was already in place prohibiting communications between them and the rest of the firm involving a number of cases in which Cantor's and Nolan's prior representation of clients conflicted with HDP's representation. *See American Sigma, Inc. v. QED Environmental Systems, Inc.*, 87–CV–70070–DT, Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Disqualification (E.D.Mich. Nov. 7, 1989); *American Sigma, Inc. v. QED Environmental Systems, Inc.*, Disqualification No. 88–1, Memorandum Order and Opinion (U.S.P.T.O. July 31, 1989). Access by Cantor and Nolan to such files was prohibited, and all of the files were clearly marked with prominently colored labels and segregated in accordance with Chinese Wall requirements. This system also was used to screen Cantor and Nolan from any contact with HDP's files on the Kearns cases.

Subsequently, Cantor informed the Court and Kearns's counsel of his new affiliation with HDP, although the precise date and form of such notice is unclear. The notice could not have mentioned this case, as it appears that Cantor had no involvement in the matter at the time. Kearns's counsel, the firm of Arnold, White & Durkee (AWD), acknowledged Cantor's involve-

**192**

ment in Kearns's lawsuit against General Motors Corporation, following his move to HDP, as early as January 13, 1989. Cantor did not formally enter an appearance on behalf of Chrysler until February 1991; however, on June 12, 1990, in compliance with Michigan Rule of Professional Conduct 1.10, he updated the Court and all counsel of record regarding his anticipated and more active role in the Kearns cases. Although his June 12, 1990 letter did not mention the litigation involving Chrysler and AMC, Cantor's more active role apparently was occasioned by Newtson's affiliation with HDP.

Newtson was employed by Chrysler as Chief Patent Counsel and has been an attorney of record in this case since 1982. Before Kearns's separate action against AMC was consolidated with this case, Newtson filed an appearance on behalf of AMC on February 16, 1989. In 1990, he retired from Chrysler and became a non-equity partner of HDP, bringing the Chrysler and AMC representation with him. He advised Kearns's counsel in June 1990 of his decision to join HDP and continue his representation of Chrysler. Prior to Newtson's joining HDP, another screen was established, which prohibited communications between Newtson and HDP attorneys on the opposite side of the Cantor/Nolan Chinese Wall.

During March and April of 1991, HDP attorneys and AWD attorneys engaged in extensive discussions and exchanged numerous letters in an attempt to come to an agreement that would permit Cantor, Nolan, and Newtson to continue to represent Chrysler and AMC. It is not clear from the record that any agreement was reached. Furthermore, shortly after the point at which Chrysler and AMC claim that the parties agreed to permit Cantor,

Nolan, and Newtson to continue their representation, Kearns began a search for new counsel. Kearns's present counsel substituted for AWD following completion of the joint pretrial order on July 2, 1991. Immediately following the substitution, his new counsel filed the motion to disqualify HDP.[1]

### III.

#### A.

■ First, the defendants argue that Kearns consented to their choice of representation by HDP. In support of this argument, they rely primarily on the record, which is inconclusive at best. HDP may have reached an agreement with AWD permitting their representation, but it certainly is not clear that Kearns ever approved of such an agreement. Indeed, AWD's decision not to move to disqualify HDP likely was one of the precipitating reasons for Kearns's search for new counsel. Whatever the circumstances, there simply is not enough in this record to show consent.

Chrysler and AMC rely on *Sampeer v. Boschma*, 369 Mich. 261, 119 N.W.2d 607 (1963), for the proposition that once Kearns's counsel agreed not to move to disqualify HDP, Kearns is forever bound by that decision, even if he retains new counsel. Such a reading stretches *Sampeer*, a case dealing with the ability of appellate counsel to raise issues not preserved by trial counsel, beyond recognition. If Kearns did not agree with his counsel's decision not to file a motion to disqualify and sought new counsel for that reason, he cannot be bound by an agreement not to file a motion to disqualify.

#### B.

■ Second, the defendants argue that Kearns waived his right to object to their

1. The parties have taken positions that create some ambiguity as to who represents Chrysler and AMC and what precisely is at issue in the motion before the Court. Kearns's motion to disqualify requests the entry of "an Order disqualifying the law firm of Harness, Dickey & Pierce ... from representing defendants in this action." In response, the defendants submitted papers "in opposition to the motion of plaintiff Robert W. Kearns ... to disqualify Chrysler's counsel Bernard Cantor, Robert Nolan and Gary Newtson (collectively 'the Chrysler team'), of Harness, Dickey & Pierce." While Cantor, Nolan, and Newtson have made some effort to distance themselves from HDP, filing all of their papers under their own names rather than listing HDP's name, the Court is satisfied that the propriety of their representation of the defendants rises or falls with the propriety of HDP's representation of the defendants.

choice of counsel by waiting until the eve of trial to file a motion to disqualify. The Court disagrees. The Court of Appeals for the Federal Circuit has held that a motion to disqualify defense counsel brought relatively promptly after settlement negotiations had broken down was timely even though it was filed approximately 17 months after the plaintiff began his action. *Kearns v. Fred Lavery Porsche Audi Co.,* 745 F.2d 600, 605 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985). Here, the motion to disqualify was brought five months after Cantor entered an appearance in the case, two months after the conclusion of the apparently unsatisfactory (to Kearns) negotiations regarding defendants' choice of counsel, and one year after Newtson brought the representation to HDP.[2] This is not sufficient delay to warrant a denial of Kearns's motion.

### C.

Having found that Kearns neither consented to HDP's representation of the defendants nor waived his right to seek HDP's disqualification, the Court turns to what is the proper starting point for analysis of the issues presented by this motion. In its Local Rules, the United States District Court for the Eastern District of Michigan has adopted the Rules of Professional Conduct adopted by the Michigan Supreme Court. Local Rule A–4(b). The Michigan Supreme Court is empowered "to adopt rules and regulations concerning the conduct and activities of the state bar of Michigan and its members." Mich.Stat. Ann. § 27A.904 (Callaghan 1986). Michigan Rule of Professional Conduct (MRPC) 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." MRPC 1.10(a)

extends that prohibition to every lawyer associated in a firm. Finally, under MRPC 1.10(b), a lawyer who is disqualified from representing a client of a firm with whom he becomes associated also disqualifies the entire firm unless the firm establishes a Chinese Wall screening him from any participation in the matter and from fees received for the representation.

Kearns's motion to disqualify HDP presents the following question, in the Court's view:

> May a firm represent a client in a matter in which the client's interests are substantially adverse to the interests of a former client, where the lawyer handling the matter was not associated with the firm at the time of the former client's representation, and where the lawyer handling the matter was representing the client at the time the lawyer became associated with the firm, if appropriate screening devices are in place as required by MRPC 1.10(b) and the lawyer was not associated with the firm at the time that it represented the former client?

The defendants argue that the existence of HDP's screening mechanism rebuts any presumption of imputed knowledge or vicarious disqualification. In support of their position, they rely on *Manning v. Waring, Cox, James, Sklar and Allen,* 849 F.2d 222, 225 (6th Cir.1988), and the comments to MRPC 1.9 and 1.10, asserting that the MRPC are not to be applied with unqualified rigor and that HDP's Chinese Wall is sufficient for compliance. As support for the latter assertion, the defendants reference a formal opinion of the Michigan State Bar Standing Committee on Professional and Judicial Ethics (the Committee), which described the Chinese Wall erected by HDP after Cantor and Nolan joined the firm as a "particularly noteworthy example" of an impenetrable screen. *See* Mich. Formal Opinion R–4 (Sept. 22, 1989).[3] In response, Kearns says that MRPC 1.9(a) and 1.10(a) prohibit HDP's representation and that, if the Court accepted the defendants' posi-

---

**2.** The record shows that Newtson did not file a new appearance in this case upon arriving at HDP.

**3.** The formal opinion was issued prior to Newtson's affiliation with HDP.

tion, any law firm could avoid disqualification in a particular matter by hiring outside lawyers to handle the matter and insulating them from the rest of the firm.

 The Court finds that Kearns's motion presents an issue of first impression that has not been addressed directly in the MRPC, case law, or administrative proceedings. Therefore, the Court believes that the Eastern District of Michigan's explicit deference to the MRPC in its Local Rules requires that it obtain the opinion of the Committee before proceeding further. The Committee, established pursuant to Michigan Supreme Court State Bar Rule 11 and by Article VI, Section 1 of the By-laws of the State Bar of Michigan,[4] is empowered by administrative order of the Michigan Supreme Court to issue written opinions interpreting the MRPC. *See* Goetz & Proctor, *Anatomy of an Ethics Opinion*, 70 Mich.Bar J. 184, 185 (1991). The Committee may issue written opinions upon the request of a member of the State Bar concerning his or her contemplated conduct or upon the request of a member of the judiciary, *see id.* (referencing Mich.Informal Opinion JI–8 (July 19, 1989)). If the parties cannot agree on the formulation of a request for an opinion in this matter within five days, they will inform the Court, and the Court will formulate and submit the request.

SO ORDERED.

## APPENDIX

## EXHIBIT A

## SUPREME COURT RULES CONCERNING THE STATE BAR OF MICHIGAN

(As of February, 1991)

### RULE 1

### STATE BAR OF MICHIGAN

The State Bar of Michigan is the association of the members of the bar of this state, organized and existing as a public body corporate pursuant to powers of the Supreme Court over the bar of the state.

---

**4.** *See* Exhibit A (attached).

---

The State Bar of Michigan shall, under these rules, aid in promoting improvements in the administration of justice and advancements in jurisprudence, in improving relations between the legal profession and the public, and in promoting the interests of the legal profession in this state.

### RULE 11

### COMMITTEES

#### Section 1. Appointment.

Committees of the State Bar of Michigan may be established for the promotion of the objects of the State Bar of Michigan, and shall consist of limited numbers of members appointed by the President with their number, jurisdiction, method of selection and tenure determined in accordance with the bylaws and the resolution establishing the committee. In the event of the resignation, death or disqualification of any member of a committee, the President shall appoint a successor to serve for the unexpired term.

#### Section 2. Classes.

The classes of committees of the State Bar of Michigan shall be:

(a) Standing committees, for the investigation and study of matters relating to the accomplishment of the general purposes, business and objects of the State Bar of Michigan of a continuous and recurring character, within the limitation of the powers conferred.

(b) Special committees, created by resolution of the Board of Commissioners defining the powers and duties of such committees, to investigate and study matters relating to the specific purposes, business and objects of the State Bar of Michigan of an immediate or non-recurring character. The life of any special committee shall expire at the end of the next annual meeting following its creation unless continued by action of the Board.

#### Section 3. Powers.

The Committee on Arbitration of Disputes Among Lawyers has the power to

issue subpoenas (including subpoenas duces tecum), to take testimony under oath, and to rule on the admissibility of evidence according to the rules of evidence applicable to civil cases.

### BYLAWS OF THE STATE BAR OF MICHIGAN

(As of January, 1991)
### ARTICLE VI
### COMMITTEES

**Section 1. Jurisdiction.**

The following standing and special committees of the State Bar of Michigan are established and shall exercise the jurisdiction indicated:

### STANDING COMMITTEES

**ADVERTISING, CERTIFICATION & SPECIALIZATION**—shall concern itself with the review, evaluation and development of appropriate standards for advertising, certification and specialization in the practice of law.

**ANNUAL MEETING COORDINATING**—shall concern itself with planning, coordinating and implementing the annual meetings of the State Bar of Michigan.

**APPELLATE COURT ADMINISTRATION**—shall concern itself with the administration, organization and operation of the appellate courts of this state for the purpose of securing the effective administration of justice.

**ARBITRATION OF DISPUTES AMONG ATTORNEYS**—shall concern itself with resolution of differences between members of the Bar arising out of professional relationships.

**AWARDS**—shall recommend to the Board of Commissioners recipients qualified to receive all awards made to attorneys in the name of the State Bar of Michigan, to recommend recipients of the annual Liberty Bell award made to non-attorneys, and to recommend the establishment of new awards or to abolish existing awards.

**CHARACTER & FITNESS** (State Committee)—shall concern itself with investigating the character & fitness of candidates for admission to the Bar and submitting its findings and recommendations to the Board of Law Examiners.

**CIVIL LIBERTIES**—shall concern itself with the protection of fundamental rights and freedoms guaranteed all citizens and shall be continuously watchful for encroachments upon the civil liberties of the individual.

**CIVIL PROCEDURE**—shall concern itself with court rules and statutes, and local court interpretations thereof related to civil practice in the courts.

**CLIENT PROTECTION FUND**—shall concern itself with the administration of the Client Security Fund including the investigation of claims, the distribution of payments authorized by the Board of Commissioners and the institution and prosecution of all subro

**COMMUNICATIONS**—shall concern itself with improvement of the methods and substance of communications concerning lawyers, the legal profession and the administration of justice between the profession and the public and between lawyers.

**CONSTITUTIONAL LAW**—shall concern itself with issues of state and federal constitutional law.

**CONSUMER LAW**—shall concern itself with the protection of consumer rights and interests through the evaluation and formulation of proposals for changes in the law and the legal system.

**CONTINUING LEGAL EDUCATION**—shall concern itself with the development and administration of the mandatory legal education program for new admittees.

**COURT ADMINISTRATION**—shall concern itself with the jurisdiction, administration, organization and operation of the courts, with special emphasis upon the in-

ter-relationship between the various courts of this State and the United States, for the purpose of securing the effective administration of justice. The membership of the committee shall be composed of the Chairpersons of the Committees on Appellate Court Administration, State Trial Courts and United States Courts.

**CRIMINAL JURISPRUDENCE**—shall concern itself with the operation of the criminal law and procedure in order to promote the fair, speedy and efficient administration of criminal justice.

**DEFENDER SYSTEMS & SERVICES**—shall concern itself with the establishment and operation of systems for the representation of indigent persons charged with criminal offenses.

**ETHICS, PROFESSIONAL & JUDICIAL**—shall concern itself with expressing its written opinion concerning the propriety of professional and judicial conduct when requested to do so by the State Bar President, Board of Commissioners, Representative Assembly, Attorney Discipline Board, Attorney Grievance Commission, Judicial Tenure Commission, State Court Administrator, Executive Director, any State Bar Committee, a member of the judiciary or any member of the State Bar who inquires concerning his/her own contemplated conduct. The Committee shall not answer any inquiries by individual members concerning conduct which has already taken place. The Committee may recommend amendments to the Michigan Rules of Professional Conduct, the Code of Judicial Conduct and other standards of professional conduct as it deems proper for appropriate approval and adoption. The Committee shall be divided into subcommittees on professional and judicial ethics. The Chairperson shall chair each subcommittee. The Michigan Judges Association, Michigan Probate & Juvenile Court Judges Association and Michigan District Judges Association shall each appoint one member to the 21 member subcommittee on professional ethics and two members to the nine member subcommittee on judicial ethics.

**FISCAL**—shall concern itself with the preparation of the proposed annual budget, supervising the receipt of all income and the expenditure of all disbursements on behalf of the State Bar of Michigan and, in general, to evaluate and make recommendations to the Board of Commissioners with respect to all proposed financial transactions involving the funds of the State Bar of Michigan.

**GRIEVANCE**—shall concern itself with the continuing review of the operation of the Attorney Discipline Board, the Attorney Grievance Commission and Judicial Tenure Commission, and