Ellen B. VERGOS, United States Trustee, Region 8, Appellant,

v.

TIMBER CREEK, INC., Appellee.

No. 96–2188 GV.

United States District Court,
W.D. Tennessee,
Western Division.

Aug. 27, 1996.

---

Julie C. Chinn, Assistant U.S. Trustee, Office of United States Trustee, Memphis, Tennessee, for Appellant.

William Thomas Newton, Glankler Brown, PLLC, Memphis, Tennessee, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT

GIBBONS, Chief Judge.

Before the court is an appeal from an order entered on October 6, 1995 by the United States Bankruptcy Court for the Western District of Tennessee. The order, followed by a memorandum on October 12, 1995, granted the debtor's request pursuant to 11 U.S.C. § 327(a) to employ the Glankler Brown law firm. Appellant contests the order below stating that the uncontested disqualification of one partner in the law firm for lack of "disinterestedness" should preclude the debtor from employing the firm. The Bankruptcy Court held that curative measures, such as a screening mechanism that would essentially quarantine the disqualified partner, would adequately maintain the integrity of the bankruptcy system. For the following reasons, the court affirms the lower's court ruling.

■ On August 9, 1995, appellee-debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On August 30, 1995 appellee filed a motion to approve the employment of the Glankler Brown law firm (hereinafter "Glankler Brown") to act as counsel for the debtor-in-possession. The United States Trustee objected on the grounds that Michael A. Robinson, a partner at Glankler Brown, is a director of the debtor and has an ownership interest in the debtor company.[1] Robinson's disqualification is not contested by appellee. Appellant maintains that the entire Glankler Brown law firm is automatically disqualified as a consequence of Robinson's disqualification.

The United States Bankruptcy Court concluded that Robinson's disqualification should not be imputed to Robinson's firm where Robinson has agreed to resign from his corporate positions and has agreed to refrain from attending stockholder meetings of appellee. The Bankruptcy Court also relied upon the quarantine doctrine which states that disqualifying characteristics that attach to a single attorney will not spread to that attorney's firm if the firm has implemented adequate screening devices to protect the remaining members of the firm.

■ A district court has jurisdiction to "hear appeals from final judgment, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under Section 157 [Title 28 of the United States Code]." 28 U.S.C. § 158(a). The first question the court must answer, then, is whether an order granting a Chapter 11 debtor's request to employ a law firm is a final order. The United States Court of Appeals for the Sixth Circuit recently reiterated that the "finality requirement is considered 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996) (quoting *In re Cottrell*, 876 F.2d 540, 541–42 (6th Cir.1989)). Thus, "where an order in a bankruptcy case 'finally dispose[s] of discrete disputes within the larger case,' it may be appealed immediately." *Id.* (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir.1983). *See also In re Jon R. Ford*, 194 B.R. 583 (Bankr.S.D.Ohio 1995) ("In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation"). Under these standards, the court determines that it has jurisdiction to hear the present appeal. The issue of employment of counsel is an important issue completely distinct from the underlying merits of the case. *See In re Middleton Arms, L.P.*, 119 B.R. 131, 132–33 (M.D.Tenn.1990) (viewing the "employment issue as separable

---

**1.** The appellant in this case is the United States Trustee for Region 8. The United States Trustees are Justice Department officials charged with monitoring and supervising various aspects of a case, 28 U.S.C. § 586, including "monitoring applications of professionals under § 327 of Title 11." *In re Federated Department Stores, Inc.*, 44 F.3d 1310, 1312 n. 2 (6th Cir.1995) (quoting statute).

from the overall Chapter 11 proceeding").[2] Furthermore, once the Bankruptcy Court granted the debtor's request, the issue of Glankler Brown's employment was conclusively determined. *See id.* at 133.

Turning to the merits of the appeal, the court first concludes that nothing in the Bankruptcy Code requires the automatic disqualification of a law firm when one of its members is disqualified.

Section 327(a) of the Bankruptcy Code provides as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

The Bankruptcy Code defines "disinterested person" as a person that,

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not an investment banker for any outstanding security of the debtor;
>
> (C) has not been, within three years before the date of filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
>
> (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
>
> (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security

holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C. § 101(14).

■ The Code defines "person" to include an "individual, partnership, and corporation...." 11 U.S.C. § 101(41). Thus, no individual, partnership, or corporation may represent a debtor if such person was, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor, or if such person has an interest materially adverse to the interest of the estate or any class of creditors or equity security holders.

■ After a careful review of the statute, the court concludes that there is no basis in the Bankruptcy Code for imputing the disqualification of an individual to that person's associational ties. First, the quoted sections of the bankruptcy code are silent as to the question of imputation of a law firm member's disqualification to the firm itself. The court is reluctant to infer a statutory prohibition against the normal right of a party to choose its lawyer. *See In re Creative Restaurant Management, Inc.,* 139 B.R. 902 (Bankr.W.D.Mo.1992) ("[T]he Bankruptcy Code contains no requirement that an entire law firm is *per se* ineligible for employment due to one of its members having previously served as an officer of the debtor.").

Second, Congress is capable of imputing a person's disqualification to his or her associational ties when it wants to. Rule 5002 of the Federal Rules of Bankruptcy Procedure, for example, discusses the prohibition of appointing relatives of the bankruptcy judge. The rule concludes that,

> Whenever under this subdivision an individual may not be approved for appointment or employment, the individual's firm, partnership, corporation, or any other

**2.** In *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1980), the Supreme Court addressed the issue of appealability of orders denying motions to disqualify opposing party's counsel in civil cases. Evaluating the order under the *Cohen* collateral order test, *see Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Court assumed, although it did not conclusively decide, that such orders involve important issues completely separate from the merits of the action. *Id.* at 375, 101 S.Ct. at 674.

form of business association or relationship, and all members, associates and professional employees thereof also may not be approved for appointment or employment.

Fed.R.Bank.Proc. 5002(a). *See Creative Restaurant*, 139 B.R. at 913 ("In the event Congress had chosen to implement a *per se* rule, it could easily have done so.").

Third, the disqualification of an entire law firm, besides being unsupported by the plain language of the statute, would violate important policy considerations inherent in the bankruptcy scheme. The debtor's right to choose qualified counsel should be disturbed only in the rarest cases. To proceed otherwise would undermine the basic trust between the attorney and client necessary to the adversarial system and objective fairness of the proceedings. *See Creative Restaurant*, 139 B.R. at 910 (noting that the relationship between the attorney and client is highly confidential, demanding personal faith, thus only in the rarest cases will the trustee be deprived of the privilege of selecting counsel).

The court therefore concludes that nothing in section 327 requires the imputation of an individual's disqualification to that person's law firm. *See also In re Capen Wholesale, Inc.*, 184 B.R. 547 (N.D.Ill.1995) (adopting the reasoning in *Creative Restaurant Management* and concluding that there is no *per se* disqualification of a law firm under Section 327).

The cases offered by the appellant are inapposite. In *In re Wells Benrus Corp.*, 48 B.R. 196, 198–99 (Bankr.D.Conn.1985), for example, the court concluded that, "the disqualification of any attorney pursuant to Code § 327(a) causes every attorney in that attorney's firm to be disqualified as well." Despite this broad language, a close reading of the case reveals that the court in fact based its conclusion upon Disciplinary Rule 5–105(D) of the Model Code of Professional Responsibility. Whether a state's professional ethics code requires a law firm's disqualification is, of course, an independent question. The rules of professional conduct, however, do not serve as a guide for statutory interpretation. Other cases relied upon by appellant are similarly grounded upon professional ethics codes, and, as such, do not dilute this court's conclusion that the Bankruptcy Code itself does not require firm disqualification.

■■■ The court next turns to whether the Model Code of Professional Responsibility as adopted in Tennessee requires the disqualification of an entire law firm when one of its members is disqualified for lack of disinterestedness. The Bankruptcy Court concluded that under Disciplinary Rule 5–105(D) of the Model Code of Professional Responsibility, as tempered by the "Chinese Wall" or screening concept, the disqualification of Robinson does not necessarily result in the vicarious disqualification of the entire Glankler Brown law firm. The Bankruptcy Court further concluded that Glankler Brown had erected adequate screening devices, thus insulating the firm from the "infected" attorney. The court concurs.

Disciplinary Rule 5–105(D) provides as follows:

(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with that lawyer or that lawyers law firm, may accept or continue such employment.

Model Code of Professional Responsibility DR 5–105(D). Tennessee has adopted the Model Code of Professional Responsibility in Tennessee Supreme Court Rule 8 (1995).

As indicated by the Bankruptcy Court, this rule has been qualified by the "Chinese Wall" concept recognized in both Tennessee and the Sixth Circuit. In *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222 (6th Cir.1988), the United States Court of Appeals for the Sixth Circuit stressed that the modern realities of legal practice must be considered when balancing the interests involved with motions for vicarious disqualification of counsel. *Id.* at 225. In light of these realities, the court recognized the efficacy of screening devices to avoid disqualification under appropriate circumstances. Although the *Manning* court went on to list several factors a court might consider in evaluating the adequacy of such screening, the court

also noted that the decision must be made on a case-by-case basis. *Id.* at 225–26 (citing *Schiessle v. Stephens,* 717 F.2d 417, 421 (7th Cir.1983).[3]

Tennessee has also recognized the use of screening devices as an appropriate measure to avoid imputing disqualification to an entire law firm. In Formal Ethics Opinion 89–F–118 (Mar. 10, 1989), reprinted in Tennessee Ethics Handbook 171, the Tennessee board of Professional Responsibility expressly adopted the holdings of *Manning* and *Schiessle.*

It is precisely because of Tennessee's and the Sixth Circuit's recognition of screening devices that appellant's reliance on such cases as *In re Wells Benrus Corp.,* 48 B.R. 196 (Bankr.D.Conn.1985), is misplaced. *Wells* held that the disqualification of one partner in a law firm acts to disqualify on a *per se* basis the entire law firm from representing the debtor. This decision rested in part on Model Code of Professional Responsibility DR 5–105(D). Unlike the present case, however, screening devices were not implemented by the law firm in question or recognized by the court.

Appellant argues that the efficacy of screening devices should be peculiarly limited to situations involving successive representation conflicts. However, no such inherent limitation has been recognized. As noted, the appropriateness of screening devices must be assessed on a case-by-case basis. *See Manning,* 849 F.2d at 225–26; Formal Ethics Op. 89–F–118 (Mar. 10, 1989) (adopting the language in *Manning* ). In fact, at least two courts have recently held that disqualification of one member of a law firm for lack of disinterestedness does not

necessarily result in the vicarious disqualification of the entire law firm. In *Capen Wholesale, Inc. v. Michel,* 184 B.R. 547 (N.D.Ill.1995), the bankruptcy court held that vicarious disqualification of a law firm from serving as counsel for a debtor in its bankruptcy case was not appropriate, even though a partner in the law firm was disqualified. The interested partner's disqualification resulted from his position as an officer of the debtor corporation. Relying on the partner's immediate resignation, lack of active duty while an officer, and agreement not to participate in the bankruptcy proceedings, the court held that disqualification would not be imputed to the law firm.[4]

In reaching this conclusion, the *Capen* court drew from a similar case, *In re Creative Restaurant Management, Inc.,* 139 B.R. 902 (Bankr.W.D.Mo.1992). Like *Capen, Creative Restaurant* involved a partner who had been secretary to the debtor in the underlying bankruptcy action. The court specifically found that no applicable law required the imputation of disqualification to the entire law firm. *Id.* at 912–13. Noting that although the partner was per se disqualified to act as counsel, he had resigned as secretary prior to filing of the action and was prohibited from participating in the case. Thus, the firm had been properly insulated and did not have any interest that would result in disqualification.

These cases implicitly differentiate between the private interests of each member of a firm and the interests of a firm as a whole.[5] Robinson was necessarily disqualified due to a personal interest in the debtor outside of his affiliation with the firm. There is no evidence, however, that the firm itself

---

**3.** Among the factors that could be appropriately considered were the following:

> "the size and structural divisions of the law firm involved, the likelihood of contact between the 'infected' attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the 'infected' attorney from access to relevant files or other information pertaining to the present litigation, or which prevent him from sharing in the fees derived from such litigation."

*Manning* 849 F.2d at 226 (quoting *Schiessle,* 717 F.2d at 421).

**4.** Although Illinois follows the Model Rules of Professional Conduct rather than the Model Code of Professional Responsibility which Tennessee has adopted, the import of the relevant rules are identical.

**5.** The Bankruptcy Court also acknowledged this fact, noting that the result of the decision was consistent with the entity theory, which bankruptcy law follows. The Bankruptcy Court explained in a footnote, "[a] partner is a separate entity from the partnership.... a distinct legal entity, separate from the partners who comprise it."

stands to lose or benefit from any of Robinson's personal affiliations. Due to the competing policy interests in allowing the debtor counsel of choice, a firm should only be removed if it is in fact not qualified to serve based on proven conflicts of interest, not supposition. *See Creative Restaurant,* 139 B.R. at 912. The bankruptcy court below found no materially adverse interests.

While the court concludes that screening devices may be employed to guard against any infiltration of Robinson's personal interests into the firm itself, the adequacy of those devices must be separately evaluated. As noted, this evaluation must be conducted on a case-by-case basis. Although there are many factors that may be considered, the Tennessee Formal Ethics Opinion previously discussed lists three minimum requirements for effective screening, including prohibiting discussion of sensitive matters, limiting the circulation of sensitive documents, and restricting access to files. Formal Ethics Op. 89–F–118 (Mar. 10, 1989), reprinted in *Tennessee Ethics Handbook* 171.[6] In the present case, Robinson has agreed to resign from his respective corporate positions with the debtor and has further agreed to refrain from attending any meetings of the debtor or in any way participating in these affairs. Additionally, the bankruptcy court specifically reserved the right to monitor all related professional fees. Relying upon these measures, the Bankruptcy Court was persuaded that the debtor and Glankler Brown had erected an appropriate "Chinese Wall." The court affirms.

IT IS SO ORDERED.

---

**6.** Citing Tennessee Formal Ethics Opinion 89–F–118, appellant attempts to include as one of the minimum screening mechanisms the requirement that the firm institute specific measures to prevent the disqualified attorney from sharing in any compensation attributable to the representation. However, this measure is specifically described in the Opinion as one which *"may be considered* in implementing screening procedures." (emphasis added).