**IN RE: YOUNG MENS CHRISTIAN ASSOCIATION OF MARQUETTE COUNTY, Debtor.**

**Case No. DM 17–90131**

United States Bankruptcy Court, W.D. Michigan, Northern Division.

Signed July 14, 2017

Timothy C. Quinnell, Quinnell Law Firm, P.L.L.C., Marquette, MI, Robert F.

Wardrop, II, Wardrop & Wardrop, P.C., Grand Rapids, MI, for Debtor.

## MEMORANDUM OF DECISION & ORDER

PRESENT: HONORABLE SCOTT W. DALES, Chief United States Bankruptcy Judge

### I. INTRODUCTION

The Young Mens Christian Association of Marquette County ("YMCA") seeks approval of its selection of counsel to represent it as chapter 11 debtor-in-possession, but the United States Trustee filed an objection raising two main grounds for disqualification. First, he argues that the YMCA's proposed counsel is not "disinterested" and therefore ineligible for appointment under 11 U.S.C. § 327(a) because a current YMCA board member, Derek Swajanen, Esq., has referred bankruptcy cases to the firm in the past. Second, he objects to the appointment because an associate attorney at the firm, Glen Sarka, Esq., served as a YMCA board member within two years of the bankruptcy filing, rendering him not "disinterested" under the statute, a disqualification that the United States Trustee asks the court to impute to the firm.

The court held an evidentiary hearing to consider the dispute on July 11, 2017, in Marquette, Michigan. The following constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014.

### II. JURISDICTION

The United States District Court for the Western District of Michigan has jurisdiction over the YMCA's chapter 11 bankruptcy case pursuant to 28 U.S.C. § 1334, and has referred that case, and all related proceedings, to the United States Bank-

ruptcy Court pursuant to 28 U.S.C. § 157(a) and W.D. Mich. L.Civ.R. 83.2(a). The contested matter arising from the YMCA's Application for Appointment of Attorneys (the "Application," ECF No. 32), and the Objection to Debtor's Application for Appointment of Attorneys (the "Objection," ECF No. 41) filed by the United States Trustee ("UST") is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A). *See also* 28 U.S.C. § 1334(e)(2). Therefore, the court has authority to determine whether the Quinnell Law Firm, P.L.L.C. ("Quinnell Law") is eligible for appointment as counsel to the YMCA as the bankruptcy estate's fiduciary.

## III. ANALYSIS

The YMCA filed a voluntary petition for relief under chapter 11 on May 5, 2017, and continues to operate its business as debtor-in-possession under §§ 1107 & 1108.[1] The credible testimony from the YMCA's current chief executive officer or CEO, Ms. Jenna Zdunek, suggests that mismanagement of grant monies and loan proceeds and other financial irregularities attributed to the prior chief executive, Ms. Lisa Coombs–Gerou, jeopardized the YMCA's survival as a social service agency serving the people of Marquette County and its environs. Although Ms. Zdunek could not rule out embezzlement by Ms. Coombs–Gerou, her testimony suggested misfeasance rather than malfeasance by the former CEO dating back to approximately 2012. The problems included, but were not limited to, spending grant monies in a manner inconsistent with the requirements of donor-foundations such as the W.K. Kellogg Foundation and the Walmart Foundation, misusing construction loan draws from the United States Department of Agriculture, and incurring half a million dollars of debt—all without the formal authority, or perhaps even the knowledge, of the former board of directors. From Exhibit B, it also appears that Ms. Coombs–Gerou hired friends and family members to work at the YMCA without performing customary pre-employment practices, including reference checks.

Credible testimony from Ms. Zdunek and Ms. Michele Butler (a founder of the YMCA in Marquette and its current board chair) established that a former board of directors ignored by-laws, committee structures, and other governance procedures during much of Ms. Coombs–Gerou's tenure at the YMCA. The former board of directors took a "hands off" approach to the day-to-day affairs, deferring entirely to the then-CEO and otherwise requiring minimal accountability from senior management. Reasonable minds may infer that the former board's insouciance and inattention to the activities of the YMCA's senior management may have enabled or contributed to the missteps that eventually landed the YMCA in bankruptcy. Testimony also established that for approximately eight months, and at Ms. Coombs–Gerou's invitation, Glen Sarka served on the board that allegedly enabled or at least tolerated the former CEO's supposed misfeasance. He resigned for personal reasons in late August, 2015, shortly after joining the board but within two years of the petition date. He began working as an associate for Quinnell Law in December, 2016.

After Mr. Sarka's resignation from the board and before his hiring by Quinnell Law, the YMCA retained a down-state bankruptcy lawyer to give advice with respect to its financial distress. Ultimately,

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

the YMCA rejected the former-counsel's advice to seek relief from the court in 2016. Instead, according to current board chair Michele Butler, the YMCA negotiated with its creditors, including Gundlach Champion, rebuilt relationships with donors, and addressed creditor lawsuits, including by tendering the defense of at least one such lawsuit to its "directors and officers" insurance carrier.

Eventually, the YMCA sought bankruptcy counsel closer to home, and retained attorney Timothy C. Quinnell, Esq., and his law firm, Quinnell Law, to prepare and file a bankruptcy petition and schedules. Quinnell Law filed the Application, making customary disclosures under Fed. R. Bankr. P. 2014, and amending the disclosures, after the UST identified several deficiencies, probably innocent but nevertheless material.

In its Objection, in addition to noting disclosure shortcomings, the UST contends that Quinnell Law is not eligible for appointment under § 327(a) given its employment relationship with Mr. Sarka and the case referrals from Mr. Swajanen.

 The approval of any professional to represent a bankruptcy estate (as here) depends on the professional's ability to satisfy the requirements of § 327, a statute which provides in relevant part as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). As the Sixth Circuit noted in *Morgenstern v. Eagle Pitcher*

*Industries, Inc. (In re Eagle Pitcher Industries, Inc.)*, 999 F.2d 969, 971 (6th Cir. 1993), § 327(a) imposes two strictures: first, a professional must not "hold or represent and interest adverse to the estate," and second, the professional must be a "disinterested person" within the meaning of § 101(14). The Code phrases the requirements in the conjunctive, so the professional must satisfy both as a prerequisite to appointment as an estate professional. This also means, as *Eagle Pitcher* recognized perhaps counterintuitively, that a person may be without an adverse interest, yet still not qualify as a "disinterested person." *Id.*, 999 F.2d at 972.

The concept of disinterestedness within the meaning of § 327(a) has a precise definition, defined in a negative or exclusionary way:

(14) The term "disinterested person" means a person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). There is no suggestion that Quinnell Law is a creditor, or equity holder, or insider, so the court's focus narrows to subsections (B) and (C).

First, with respect to Mr. Swajanen, after listening to Mr. Quinnell's statements during the hearing on the Application, the UST has apparently abandoned his suggestion that the relationship with Mr. Swajanen disqualifies Quinnell Law under

§ 327(a). Indeed, the UST evidently saw no reason to challenge Mr. Quinnell's report that Mr. Swajanen has referred only two cases to Quinnell Law, approximately five years ago, and without referral fees. The UST's presentation during the evidentiary portion of the hearing, and in closing arguments, omitted any meaningful discussion of Mr. Swajanen, from which the court will assume the Objection, to the extent premised on Mr. Swajanen's referrals, has been abandoned. Regardless, given the UST's more ponderous (and, as explained below, ultimately successful) argument regarding the firm's relationship with Mr. Sarka, the court need not resolve the aspect of the Objection premised on Mr. Swajanen's relationship, if any, with Quinnell Law.

■ Second, with respect to Mr. Sarka, as the court indicated during the hearing, there is no dispute that Mr. Sarka himself is not a disinterested person—testimony established that he was a YMCA director within two years of the petition date and thereby disqualified under § 101(14)(B). Nevertheless, the court is not persuaded that Mr. Sarka's disqualification should be automatically or reflexively imputed to Quinnell Law under authorities such as *In re Essential Therapeutics, Inc.*, 295 B.R. 203 (Bankr. D. Del. 2003), for the reasons set forth in *In re Cygnus Oil and Gas Corp.*, 2007 WL 1580111, Slip Op. Case No. 07–32417 (Bankr. S.D. Tex. 2007), *In re Timber Creek, Inc.*, 187 B.R. 240, 244 (Bankr. W.D. Tenn. 1995), and similar authorities. A party's choice of counsel is too important, and too deserving of protection, to apply a *per se* rule of imputed disqualification without a firm direction from Congress requiring such a result. .

This aversion to *per se* imputation follows in part from the importance of the relationship between attorney and client, but mostly from the court's reading of the statute, which provides no express basis for indirect or imputed disqualification in § 101(14), except in § 101(14)(C), which expressly mentions direct or indirect relationships. This is precisely the sort of language that Congress would use to create imputed disqualification. The reference to indirect relationships in § 101(14)(C), juxtaposed to the text in § 101(14)(B) which omits any such relationship, signals that Congress intended the court to consider indirect and potentially disqualifying relationships under one part of the statute but not the other. Moreover, § 327 and § 1107 together authorize a debtor-in-possession to retain "one or more attorneys" and it is clear from the hearing on the Application that, as a practical matter given the "ethical wall" Mr. Quinnell has erected around Mr. Sarka, that the Debtor is asking to retain the latter but not the former in this two-person firm.

■ Moreover, as suggested during the hearing, the court is not persuaded by the UST's reference to M.R.P.C. 1.10(a), 1.7, 1.8(c), and 1.9 which, as Judge Walrath herself acknowledged in *Essential Therapeutics*, 295 B.R. at 208–09, only come into play with actual conflicts. In addition, the meaning of the federally-defined term "disinterested person" is largely a federal question. *Cf.* 28 U.S.C. § 1334(e)(2). The supposedly "Herculean task" of evaluating individual members of a professional firm which evidently motivated the *Essential Therapeutics* decision is considerably less Herculean in a district like ours that has mostly small firms, or with respect to a firm like Quinnell Law, that has two lawyers.

■ To summarize, then, the court reads § 101(14)(B) as disqualifying Mr. Sarka, but not necessarily Quinnell Law—a distinct "person" as that term is defined in § 101(41). Rather, the disinterestedness

(or not) of Quinnell Law will depend on § 101(14)(C), and a more nuanced, fact-based consideration of potentially disqualifying interests of that entity. Accordingly, because Mr. Sarka is an employee of Quinnell Law, the court must consider whether Quinnell Law's relationship with Mr. Sarka under the circumstances of the case prevents the court from declaring that Quinnell Law is a "disinterested person."

Having heard the testimony and considered the several exhibits offered during the July 11, 2017 hearing on the Application, the court finds that the employment relationship between Quinnell Law and Mr. Sarka, Mr. Sarka's potential exposure as a former member of the YMCA board during the tenure of Ms. Coombs–Gerou, and the former CEO's concomitant financial and perhaps other mismanagement, together disqualify the firm. It certainly requires no stretch of the imagination to conclude that the individuals who served as members of the board during Ms. Coombs–Gerou's tenure as CEO—including Mr. Sarka—may have to answer to the Debtor for their seeming failure to detect, deter, or otherwise address what colorably appears be the former CEO's mismanagement. The court need not decide today whether Ms. Coombs–Gerou in fact harmed the Debtor, though there is more than a suggestion of such harm in the record. Rather, it is enough to conclude, as the court does, that the Debtor may have good reason to investigate whether it has breach of fiduciary duty or other claims against the board members who arguably contributed to the alleged mismanagement by ignoring by-laws, policies, and procedures designed to prevent financial harm—procedures such as constituting finance and other committees, and instituting regular reporting to the board by executive management, such as the current YMCA board has recently restored. Natu-

rally, the YMCA will rely on its counsel to conduct such an investigation.

Mr. Sarka's tenure on the board was admittedly brief, and the court does not intend through this opinion to impugn his service (or the service of other board members). Instead, the court need only observe that Quinnell Law may be chilled, or may be perceived to be chilled, in investigating the conduct of its current (and only) associate. If, as Mr. Quinnell predicts, any such investigation would exonerate Mr. Sarka, interested parties could be forgiven for harboring doubts about the exoneration of one attorney by the very firm that hired him. In other words, Mr. Sarka's potential liability as a former YMCA board member recruited by the offending CEO during the crucial period of mismanagement, coupled with the duty of debtor's counsel to investigate and perhaps pursue causes of action against board members, could cloud the judgment and disinterestedness of Quinnell Law. As the current employer of a natural target of such an investigation, and as an entity with its own reputational interests, Quinnell Law has "an interest materially adverse to the interest of the estate," even assuming Mr. Sarka is completely blameless. 11 U.S.C. § 101(14)(C).

## IV. CONCLUSION AND ORDER

During the hearing, proposed counsel for the Unsecured Creditors' Committee urged the court to cure Quinnell Law's lack of disinterestedness by assigning to the Committee the task of investigating the acts and omissions of the YMCA's former board, and perhaps bestowing derivative standing to pursue any claims. Nevertheless, by offering its proposal to address Quinnell Law's lack of disinterestedness, the Committee necessarily concedes the disqualifying condition in the first instance, and invites the court to wink

at the statute. The court cannot disregard the command of Congress, despite the practical appeal of the Committee's suggestion.

Regrettably, today's decision will deprive the YMCA of its choice of competent, local, and cost-effective counsel, as the Debtor and Committee counsel argued during the hearing, but the court is not free to disregard its conclusion that the Debtor's choice of counsel is not disinterested.

· NOW, THEREFORE, IT IS HEREBY ORDERED that the Application is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision & Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005–4 upon Timothy C. Quinnell, Esq., Robert F. Wardrop, II, Esq., Michael V. Maggio, Esq., the United States Trustee, all parties requesting notice of these proceedings, and all entities included on the Debtor's mailing matrix.

**IT IS SO ORDERED.**